206 Md. 589 (1955)
112 A.2d 488
BETHLEHEM-SPARROWS POINT SHIPYARD, INC.
v.
HEMPFIELD BETHLEHEM STEEL COMPANY
v.
CHISOLM BETHLEHEM STEEL COMPANY
v.
LOUNSBURY BETHLEHEM STEEL COMPANY
v.
WIGGS (Four Appeals in One Record)
[No. 112, October Term, 1954.]
Court of Appeals of Maryland.
Decided March 25, 1955.
Jesse Slingluff, Jr., and Joseph H. Young, for appellants.
*590 Hyman B. Rubenstein, with whom was Marvin B. Steinberg, on the brief, for appellee.
DELAPLAINE, J., delivered the opinion of the Court.
This record contains four appeals, each of which is from a judgment affirming an award of the State Industrial Accident Commission to a workman accidentally injured in the course of his employment. Three of the workmen sustained an injury to a finger, and the fourth sustained an injury to a toe.
The first appellant, Mike Hempfield, an employee of Bethlehem-Sparrows Point Shipyard, Inc., sustained a crushing injury to the distal phalanx of the second finger of his right hand. The first report of the physician showed that he sustained a fracture of the distal phalanx and exposure of the tuft, and also a laceration of the middle phalanx. A later report, made after the healing period was complete, showed that there was no motion at the distal interphalangea joint. The physician estimated that there was 40 per cent loss of use of the finger.
The second appellant, Joe Willie Chisolm, an employee of Bethlehem Steel Company, injured the first finger of his left hand. The X-ray report showed a fracture in the tuft with separation of the distal fragments. There was loss of flexion of the distal and proximal interphalangeal joints. The scar was sensitive to palpation, and he suffered pain whenever he tried to put pressure on anything by bending the finger. There was also a loss of gripping power. The physician reported that there was 35 per cent loss of use of the finger.
The third appellant, Elmer V. Lounsbury, an employee of Bethlehem Steel Company, injured the first finger of his left hand while tightening a nut on a mower. While X-rays showed no evidence of any bone injury, there was a laceration of the distal interphalangeal joint, and also a slight restriction of flexion at the proximal interphalangeal joint, so that the tip of the finger can barely touch the palm of the hand. The distal phalanx was held in flexion and showed evidence of atrophy. *591 There was some hypesthesia of the distal phalanx. The physician reported that there was 40 per cent loss of use of the finger.
The fourth appellant, Elbe Wiggs, an employee of Bethlehem Steel Company, sustained a fracture of the proximal phalanx of the great toe of the left foot. There was no motion at the interphalangeal joint. The physician estimated that there was a 50 per cent loss of use of the toe.
The Industrial Accident Commission applied that subsection dealing with permanent partial disability in the Workmen's Compensation Act, Code 1951, art. 101, sec. 35(3) (b), which provides as follows:
"Compensation for the loss, or loss of use, of more than one phalanx of a digit of a hand or foot shall be the same as the loss, or loss of use, of the entire digit. Compensation for the loss, or loss of use, of the first phalanx shall be one-half of compensation for loss of the entire digit. Compensation for loss or loss of use of two or more digits or one or more phalanxes of two or more digits of a hand or foot may be apportioned to the loss of use of the hand or foot occasioned thereby, but shall not exceed the compensation for the loss of a hand or foot."
Finding that Hempfield sustained a permanent partial disability resulting in 40 per cent loss of use of his finger, the Commission held that his disability was compensable at 100 per cent loss of use, and ordered the employer to pay him compensation at the rate of $25 per week, beginning April 7, 1952, for the period of 25 weeks.
Finding that Chisolm sustained a permanent partial disability resulting in 35 per cent loss of use of his finger, the Commission held that his disability was compensable at 100 per cent loss of use, and ordered the employer to pay him compensation at the rate of $25 per week, beginning July 6, 1953, for the period of 30 weeks.
*592 Finding that Lounsbury sustained a permanent partial disability resulting in 40 per cent loss of use of his finger, the Commission held that his disability was compensable at 100 per cent loss of use, and ordered the employer to pay him compensation at the rate of $25 per week, beginning July 2, 1953, for the period of 30 weeks.
Finding that Wiggs sustained a permanent partial disability resulting in 50 per cent loss of use of his toe, the Commission held that his disability was compensable at 100 per cent loss of use, and ordered the employer to pay him compensation at the rate of $25 per week, beginning December 15, 1953, for the period of 25 weeks.
The employers appealed from the orders of the Commission to the Circuit Court for Baltimore County. That Court affirmed the orders of the Commission. The employers thereupon appealed from the judgments of the Court.
The original Workmen's Compensation Act, as enacted by the Legislature of Maryland in 1914, provided: (1) that the loss of the distal phalanx of any finger shall be considered to be equal to the loss of one-third of such finger; (2) that the loss of the middle phalanx of any finger shall be considered to be equal to the loss of two-thirds of such finger; and (3) that the loss of more than the distal and middle phalanxes shall be considered to be equal to the loss of the whole of such finger. Laws 1914, ch. 800.
That provision remained in force for 37 years. In 1951 the Legislature made an important modification of that provisions, which is now codified in Section 35(3) (b). The change was made in Chapter 451 of the Laws of 1951, which made numerous amendments to the Workmen's Compensation Act for the purpose of giving greater compensation to workmen accidentally injured in the course of their employment.
The Legislature evidently increased the compensation for workmen who suffer injuries to fingers or toes in recognition of the view that when a workman loses *593 one phalanx, even though he loses only one-third of the digit, he actually suffers an industrial disability that is greatly more than a one-third loss of use of the digit. The members of the Industrial Accident Commission found the language of this particular portion of the Act of 1951 to be clear and explicit, and they considered it their duty to follow the mandate of the Legislature.
The employers argued, however, that, while it may be true in these cases that there is a partial loss of use of a phalanx or even two phalanxes, there is not a complete loss of use of any phalanx. They argued that, even if there is a substantial loss of use of the distal phalanx, there is not a substantial loss of use of any more than the distal phalanx.
The employers therefore contended that the Commission should have made the awards of compensation in these cases in accordance with Section 35(3) (e), which provides:
"In all cases where there has been an amputation of a part of any member of the body herein specified, or the loss of the use of any part thereof, for which compensation is not specifically provided herein the Commission shall allow compensation for such proportion of the total number of weeks allowed for the amputation or the loss of the use of the entire member, as the affected or amputated portion thereof bears to the whole."
The employers urged that the Commission should award compensation to Hempfield for 40 per cent loss of use of his finger; to Chisolm for 35 per cent loss of use of his finger; to Lounsbury for 40 per cent loss of use of his finger; and to Wiggs for 50 per cent loss of use of his toe.
The Act of 1951 explicitly increases the compensation allowed for the loss of the first phalanx of a digit to one-half of the amount allowed for the loss of the entire digit, and increases the compensation for the loss of more than one phalanx of a digit to the amount allowed *594 for the loss of the entire digit. Moreover, it is clear from the insertion of the words "or loss of use" in Section 35(3) (b) that it was the intention of the Legislature to allow the same compensation for the loss of use of a phalanx as for the amputation of a phalanx.
In each case now before us it was questioned whether the employee sustained a complete loss of use of one phalanx. However, the attending physician reported, and the Commission found, that the employee sustained more than one-third loss of use of the digit. Inasmuch as the employee sustained a substantial loss of use of one phalanx and a partial loss of use of another phalanx, the loss was specifically provided for by Section 35(3) (b), and therefore Section 35(3) (e) was not applicable. The Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Bethlehem-Fairfield Shipyard v. Rosenthal, 185 Md. 416, 45 A.2d 79; Watson v. Grimm, 200 Md. 461, 90 A.2d 180.
The Court of Appeals of New York applied this rule of construction in the case of Matter of Petrie, 215 N.Y. 335, 338, 109 N.E. 549, 550. In that case there was a statement in the findings of the New York Workmen's Compensation Commission that only one-third of the distal phalanx was cut off. Nevertheless, the Court considered the Commission's findings in the light of the evidence as stating that substantially all of the distal phalanx was cut off. Accordingly the Court sustained the Commission's award of compensation equal to one-half of the amount allowed for the loss of a finger.
In commenting on the Workmen's Compensation Law of New York, with particular reference to compensation allowed for the loss of a part of a finger, Judge Hiscock spoke as follows:
"The statute was the expression of what was regarded by the Legislature as a wise public policy concerning injured employees. Under such circumstances, we think that it is to be *595 interpreted with fair liberality, to the end of securing the benefits which it was intended to accomplish. Applying these rules to what happens to be in this case an accident of minor importance, we think we should hold that the provisions of the statute providing compensation for the loss of a certain portion of the finger become operative and applicable when it appears that substantially all of the portion of the finger so designated has been lost, and that we should not interpret such provisions too narrowly for the purpose of defeating a recovery."
As we find no error in the orders of the Commission awarding each claimant compensation for total loss of use of the injured digit, the judgments of the Court below affirming the Commission's orders will be affirmed.
Judgments affirmed, with costs.