**ELMER E. STOCKMAN JR., CONSTRUCTION COMPANY, Appellant,**

v.

**INDUSTRIAL COMMISSION of Missouri and Willard E. Weider (Employee), Respondents.**

No. 25431.

Kansas City Court of Appeals, Missouri.

Feb. 1, 1971.

John L. Hearne, James L. Barry, Keyes & Hearne, Jefferson City, for appellant.

Edgar M. Eagan, Jefferson City, for respondents.

JAMES W. BROADDUS, Special Commissioner.

This is a proceeding under the Workmen's Compensation Act, the appeal being taken by the employer, Elmer E. Stockman, Jr., Construction Company, from the judgment of the Circuit Court affirming an award of the Industrial Commission in favor of the employee, Willard E. Weider, for compensation covering the value of necessary medical aid not furnished by the employer or insured, $550.25; for healing period 16½ weeks of compensation at $57 per week totaling $920.14, and for permanent partial disability, 32 weeks of compensation at $52 per week, totaling $1664, the overall total being $3,134.39.

The employer, Stockman, is engaged in the construction of homes in the Jefferson City area. The employee, Weider, is a carpenter. He entered Stockman's employ on April 14, 1967, and continued in said employment until the date of the injury in question, which occurred on January 13, 1968. Stockman's office is located in the basement of his home at 701 Tomahawk Drive, Jefferson City.

During the time of his employment in 1967 Weider was paid by check every two weeks. He was required to keep his own time card.

On January 1, 1968, Stockman had a meeting with his two other employees in the office. Weider was not present at that meeting where it was agreed that the other two employees would be paid on a monthly basis, and Weider on a weekly basis.

Weider testified that he was required to bring his time cards to Stockman's office. He was asked: "Q. Do you know how many pay checks you received from him (Stockman)? A. Thirty-seven. Q. Did he ever deliver a pay check to you on the job? A. No." On cross-examination he was asked: "Q. He (Stockman) directed you to pick up your check by coming out to his house and getting it? A. Yes, sir." Stockman testified on cross-examination: "I don't know about (him) asking if he wanted it (pay check). I would have asked him to come to the house to get it." Stockman further testified that Weider picked up his pay check at the house "a majority of times."

On January 13, 1968, the crew finished work on a house. Stockman and Weider at about 2:30 p. m. "went over to look at a job on Indian Hills." Finally, they arrived at Stockman's office at about 5:30 p. m. Weider said that "when we got there I had

my time card in the truck. I took it in the house and we started drinking a beer, and we started talking about a job." Jim Allen, a guest, came in. Weider received his check about 5:45. Allen, the guest, left, and Stockman and Weider then discussed, to quote Stockman's words, "the pay thing the crew set up after the first of the year, we were discussing that."

At about 6:30 p. m. Weider left the office by the basement door and walked 8 or 10 feet onto a patio where he fell on the ice and broke his left leg. It had rained, sleeted and snowed that day. Weider crawled back to Stockman's door, rang the bell, was admitted and, after waiting for a considerable length of time for an ambulance, was taken to the hospital. There his left leg between the knee and hip was put into a cast. He got about on crutches for approximately three months after he got out of the hospital.

The Referee made "Findings of Fact and Rulings of Law", which are as follows:

"Employee: Willard E. Weider
  Injury No. AE–1767

"In the opinion of this Referee, the method of payment of wages to the employee by the employer creates a situation in which the habit of the employee in calling at the business office of the employer to receive his check on numerous occasions, in effect made this practice incidental to his employment. The Missouri Supreme Court has stated in Lampkin v. Harzfeld's, 407 S.W.2d 894, l. c. 897 '(3–6) An injury arises "out of" the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and that an injury to an employee arises "in the course of" his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment *or engaged in doing something incidental thereto.*' (Emphasis ours) To this Referee the

pattern established over a period of time by the employee's calling at the business office of the employer for his pay check, would create an activity incidental to his employment. There is conflicting testimony as to whether this was at the behest of the employee or the employer, but to this Referee it matters little since the employer acquiesced in the arrangement and in so doing made such procedure incidental to the employment.

"The Employer and Insurer's Exhibit 1 indicates that as of May 9, 1968, the employee returned to work and thereafter worked as steadily as he did prior to January 13, 1968. This would terminate his temporary total disability as of May 5, 1968.

"This brings us now to the question of permanent partial disability. The parties stipulated that the matter could be tried on the medical reports of the examining doctors (see Employer and Insurer's Exhibit 2 and Claimant's Exhibit B). In Employer and Insurer's Exhibit 2, Dr. Marshall W. Kelly rates the permanent partial disability at approximately 15 to 20 per cent. He goes on however to state 'In due time when the strength returns to his quadriceps, and the muscles return, if they do return to normal condition, he could end up with little if any disability.' On the other hand, in Claimant's Exhibit B. Dr. Fred O. Tietjen states: 'His temporary partial disability at the level of the left knee is 15 to 20 per cent. Some improvement in strength, and therefore an ultimate decrease in the final permanent disability can still be expected. Most probably a final opinion as to the ultimate permanent disability could be most accurately made in approximately six months.' The report of Dr. Tietjen is dated December 24, 1968, and the report of Dr. Marshall Kelly is dated February 5, 1969. Both find at that time 15 to 20 percent disability, and both doctors speculate that there may be improvement. Such speculation cannot, in my opinion, be allowed, and I find that the permanent partial disability is, as stated

above, 20 percent disability of the left leg at the level of the knee."

In Vol. 1 Larson's Workmen's Compensation Law, 452.17 par. 26.30 it is stated:

"The contract of employment is not fully terminated until the employee is paid, and accordingly an employee is in the course of employment while collecting his pay. This rule was laid down in an early English case in support of an award to an employee who, discharged on Wednesday, had returned on Friday, the regular pay day, and was injured. Similar awards have been made to an ex-employee who fell on an icy sidewalk on his employer's premises while leaving the pay office with his pay, on a day he was not working." Many cases are cited in support of this text.

Appellant contends that the circuit court erred in affirming the award of the Industrial Commission because Weider's injuries were sustained "after the day's work activities had been concluded and not while he was engaged in any activities incidental to the duties of his employment."

The law which governs us here is well stated in the case of Palmer v. Knapp-Monark Co., Mo.App., 247 S.W.2d 341, 344, as follows:

"In performing our duty we cannot substitute our own judgment on the evidence for that of the Commission, but must determine whether such tribunal could have reasonably made its finding and reached its decision upon a consideration of all the evidence. We may not set aside the award unless the decision is clearly contrary to the overwhelming weight of the evidence. We are also bound to adhere to the rule of deference to the findings of the Commission where the credibility of the witnesses is involved."

Appellant relies heavily upon the case of Taylor v. Bi-State Development Agency, Mo.App., 416 S.W.2d 31, in which an injury occurred to an employee bus driver who, after turning in his day's receipts, had gone into a pool hall where he was injured. There is no analogy between that case and the case at bar. In the instant case, it was necessary for Weider to stay with Stockman all afternoon in order to go out to the office to get his paycheck. After Weider had been paid and Jim Allen, a guest, had left, Weider and Stockman discussed the new arrangement for the handling of the issuance of the checks. Weider's primary objective was to get his paycheck and discuss with his employer the method of the payment of the future paychecks. There is no question but that the receipt of such paychecks and the arrangement for the handling of future paychecks were an *essential part and incidental to his employment.*

Appellant also contends that the Circuit Court erred in affirming the award of the Commission which allowed Weider: "For permanent partial disability, 32 weeks of compensation." Appellant argues that there is no competent and substantial evidence to support such finding.

The Referee's Finding, which we have quoted, sets out the opinions of Doctors Kelly and Tietjen in which they estimate Weider's disability at 15 to 20 per cent. We also point out some additional matters appearing in the reports of those doctors.

Dr. Tietjen's finding was made on December 24, 1968, almost a year after the accident. He states: "He (Weider) could not walk on his left heel. There was obvious atrophy of the left calf as compared to the right. There was one-half decreased circumferential measurement of the left calf as compared to the right at similar levels. The previous fracture of the left tibia and fibula have now healed, however, the shaft of the tibia will most probably continue to heal and become stronger in the ensuing months. Therefore, the fracture at this time has not reached maximum strength. He has residual limitation of motion of the left ankle and some residual weakness of the left calf. I therefore feel that maximum im-

provement, as of this date, has not been reached."

Dr. Kelly's examination was made on February 5, 1969, more than a whole year after the accident. His report states: "He (Weider) states that the motion at the ankle is not complete, he has trouble standing on his heels with his weight on his left heel. Patient states at the present time, the leg is not quite as strong as it was previously, but it is getting stronger all the time."

In the case of Johnson v. Fogertey, Mo.App., 194 S.W.2d 924, 929, it is said: "The finding by the Commission that the employee suffered a ten per cent disability of his body as a whole was a finding of fact which was clearly within the province of the Workmen's Compensation Commission. The established and settled rule is that if such a finding is supported by substantial and competent evidence an appellant court is not authorized to interfere with it."

As was said in one of the cases cited by appellant, Davis v. Brezner, Mo.App., 380 S.W.2d 523, 528: "Our conclusion is that permanent partial disability as found under the 'catchall' part of Section 287.190 R.S. Mo. V.A.M.S., can be *inferred* from the whole evidence, although there is no single positive declaration to that effect."

Your Special Commissioner is of the opinion that there was sufficient and substantial evidence in the record to support the award of the Commission, the amount of which was modest, and so recommends that the judgment of the Circuit Court be affirmed.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.