PETER NAILS *v.* MARKET TIRE COMPANY,
INC. ET AL.

[No. 875, September Term, 1974.]

*Decided December 1, 1975.*

The cause was argued before MOYLAN, MOORE and MASON,
JJ.

*Leonard J. Ralston, Jr.,* with whom were *Ashcraft, Gerel
& Koonz* on the brief, for appellant.

*William D. Foote, Jr.*, with whom was *Francis J. Ford* on the brief, for appellees.

MASON, J., delivered the opinion of the Court.

This is an appeal from the judgment of the Circuit Court for Montgomery County denying the Appellant, Peter Nails, compensation for an injury alleged to have been sustained in the course of his employment.

The evidence adduced at trial disclosed that Nails was employed by the Market Tire Co. for approximately ten years. At the time of separation he was the head mechanic and worked on a commission basis. On Thursday, April 22, 1972, Nails was discharged because he recommended certain repairs for a customer's car which the company believed were not needed. On Saturday, April 24th, Nails returned to the company to pick up his tools, which he had been required to furnish as a condition of his employment. While lifting the tools, which weighed about 800 pounds, with the assistance of another employee, he claimed he injured his back. Nails testified further that it was customary to allow employees two or three days to remove their tools.[1]

After a hearing, the trial court ruled, in effect, that Nails was not an employee at the time of the alleged injury and, therefore, the injury did not arise out of and in the course of his employment. No determination was made as to whether Nails' alleged injury resulted from an accident. As framed by the proceedings below, the narrow issue presented on this appeal is whether the alleged injury sustained by Nails after returning to the company to pick up his tools arose out of and in the course of his employment.

We have been unable to find any Maryland case on this point and none has been called to our attention. We believe, however, that the case of *Consol. Engineering Co. v. Feikin,*

---

[1]. Although the employer moved to strike the latter testimony, he continued his cross-examination of the witness without obtaining a ruling on the motion. In the absence of showing a ruling was made or sought, the motion is treated as waived and not preserved for appellate review. Maryland Rules 522 d, 1085.

188 Md. 420, 52 A. 2d 913 (1947) is instructive and has precedential value as a guide.

In *Feikin*, the claimant was a day laborer, who was only paid for the hours actually worked. After an extended illness, the claimant returned to the job on Monday, July 16th and was assigned to a labor-gang in the hot strip mill. He worked that one day and did not return again until 10:00 a.m. Friday, July 20th, to pick up his one day's pay. It was the custom of the company to distribute pay slips on Friday morning, but require the workmen to pick up their wages at the office between 3:00 p.m. and 4:00 p.m. After receipt of his pay slip, the claimant told the superintendent he would return to work Monday if he felt the same. The claimant then went to the hot strip mill and asked one of the gang leaders where Blair's gang was. He was told they were still working where they were on Monday. At 12:30 p.m. the claimant was found in the strip finishing department severely burned.

The trial court directed a verdict for the claimant, which the Court of Appeals reversed and remanded for a new trial. The Court held that the evidence did not warrant the trial judge ruling as a matter of law that the claimant's disability was the result of an accidental injury arising out of and in the course of his employment. The Court indicated further the jury might have inferred that the claimant, having five hours to idle away before receiving his pay, visited the mill to talk about some personal matter.

Even though the Court of Appeals reversed *Feikin* on the grounds noted above, it adopted the English Rule which holds that where a workman remains on the premises or returns thereto to obtain his pay after work ceases, he is still acting in the course of his employment.[2] As evidence of the adoption of the English Rule, the Court of Appeals said:

> "It is acknowledged that a contract of employment is not necessarily terminated when the

---

2. The employee in the instant case did not receive his final wages until after the accident.

actual work ceases, but may continue until the workman's wages are paid. This view was announced in England in 1907 in *Lowry v. Sheffield Coal Co.*, 24 Times L. R. 142, 1 B.W.C.C. 1, where a collier quit work on Saturday at 5 a.m., and expected to resume work on Sunday night, but at noon Saturday while walking along a footpath on the employer's premises on the way to the office to get his wages, he was knocked down by an engine moving along a railway line which ran into the employer's premises. The rule was reaffirmed in 1911 in *Riley v. Holland & Sons*, 1 K. B. 1029, 4 B.W.C.C. 155, where a female mill worker, who quit work on Wednesday, went to the mill on Friday, the regular pay day, to get her wages, and was injured when she slipped on her way down the steps from the pay office. In both cases it was held that the injuries arose out of and in the course of employment. . . .

". . . The established custom, under which the workmen are required to appear at the employer's pay office for their wages on or after the regular pay day fixed by the employer, becomes a part of the contract of employment. *Parrott v. Industrial Comm. of Ohio* . . .". **188 Md. at 425, 426.**

In *Lowry v. Sheffield Coal Co.*, *supra*, at 2, the English Court stated:

> "In my view it was just as much part of his employment to go to the pay office on that day at that hour as it was to go down the pit the following Sunday night."

In *Riley v. Holland & Sons*, *supra*, at 157, the English Court observed:

> "The contractual obligations of the employers were not terminated or satisfied until the wages due on Wednesday were paid on Friday. . . . Though her employment was at an end on Wednesday

158

night, in the sense that she had ceased to work under the contract, yet the employment continued because of the obligation of the employers to her arising out of the employment and continuing until Friday afternoon."

Arthur Larson in his treatise on *The Law of Workmen's Compensation*, (vol. 1, 1972), supports the English Rule that "the contract of employment is not fully terminated until the employee is paid". Sec. 26.30. He further supports the point that "collecting one's personal effects on leaving employment is logically no different from collecting one's pay, since both are necessary incidents of an orderly termination of the employment relation." Sec. 26.40. We agree and find no rational basis for not applying the principle laid down in *Feikin, supra,* and the cases cited therein, to the circumstances here.

In *Parrott v. Industrial Commission,* 145 Ohio St. 66, 60 N.E.2d 660 (1945), cited with approval in *Feikin, supra,* the employee quit his job on October 23, and commenced working for another company on October 26. He returned to his former employer on October 29, to pick up one week's pay due him. The bookkeeper was at lunch and the employee went to the boiler room to get his work clothes he had left behind. In returning from the boiler room to the timekeeper's office, he fell and sustained an injury to his pelvic bone and hip. The Ohio Supreme Court, in addition to affirming the English Rule regarding an employee returning to pick up wages, said:

"Clearly he was not a trespasser in going to the boiler room for his clothing which he had worn while at work there. He had a right to pick up his own personal property which he was unable to take away with him when he quit work ... Acts of an employee done within a reasonable period of time after actual working hours in making the necessary preparations to terminate his employment, are incidents of and within the course of his employment within the meaning and operation of

the workmen's compensation Laws." 60 N.E.2d at 662.

In *Molloy v. South Wales Anthracite Colliery*, 4 B.W.C.C. 65 (1910), a miner left his job on April 28, 1910, after refusing to do certain work he was ordered to perform. He returned on Monday, May 2, 1910, and was told by the manager he had dismissed himself. The miner obtained leave to pick up his tools, and while down in the mine for that purpose, he was injured by a falling stone. The lower court found that the foreman ordered the miner to fetch his tools and that the accident arose out of and in the course of his employment. The Court of Appeals, England, affirmed. Larson, in commenting on this case, said:

> "When a man has been fired, it could indeed be properly said that he is impliedly ordered to clear his personal possessions out of the way to make a place where his successor can hang his hat."

I *The Law of Workmen's Compensation*, Sec. 26.40, at 5-212. Of like import, see *Cowler v. The Moresby Coal Co.* (Company tools), 1 Times Law Reports 575 (Q.B. 1885). See also *Marra Bros. v. Cardillo*, (Clothes) 59 F. S. 368 (E.D. Pa. 1945), *aff'd.* 154 F. 2d 357 (3rd Cir. 1946); *Bardes v. East River Housing Corp.*, (Clothes) 14 App.Div.2d 939, 221 N.Y.S.2d 51 (1961); *Mitchell v. Consolidated Coal*, (Tools) 195 Iowa 415, 192 N. W. 145 (1923).

There is responsible authority to the contrary. In *Pederson v. Kromery*, 201 Wis. 599, 231 N. W. 267 (1930), the employee was terminated, apparently on a weekend, and returned to the premises of the employer around 10:00 a.m. Monday to pick up his pay. After receiving his pay, he went to the warehouse to pick up his work clothes and tools. While going downstairs to where the articles were, he slipped and broke a bone in his foot. The Supreme Court of Wisconsin, although conceding that an employee, even after discharge, is covered by the Workmen's Compensation Act, provided he is injured on the employer's premises while present for the purpose of collecting his pay, held that Kromery's return to

the warehouse after discharge to pick up his tools and clothes was not referable to his employment contract and was not covered by the Act. *See Parten v. State Industrial Commission*, 496 P. 2d 114 (Okla. 1972) and *Johnson v. City of Albia*, 203 Iowa 1171, 212 N. W. 419 (1927). Three judges dissented and their opinion is more persuasive and convincing than that of the majority. The dissenting opinion held that:

> "The appellant was subjected to the hazard that caused his injury solely because of his status as an employee. It was the fact that he was an employee that led him to take his tools and working clothes to the premises of his employer. It was the fact that he was an employee that made it necessary for him to return to his employer's premises in order to secure his property. The removal of his working clothes and tools from the premises was just as essential to end his status as an employee as was the payment of his wages. In either case I believe it should be held that the status continues until he had been paid his wages and has had a reasonable opportunity to remove his personal belongings, taken to his employer's premises in order that he might there use them for the purpose of promoting the business of his employer. . . .
>
> ". . . To hold that the status created by the employment is terminated before the employee has a reasonable opportunity after notice of discharge to get his personal belongings seems to me to be a reversal of the policy of the law as it has been interpreted heretofore by this Court and by other courts under similar acts." 231 N. W. at 270, 271.

Whether an accident causing an injury to an employee results from some obligation, condition or incident of the employment depends upon the circumstances of each particular case. *Feikin, supra*, at 424.

In the present case, the employee returned to the job two days after being discharged to pick up his tools, which he

was required to furnish as a condition of his employment. The tools, together with the tool box, weighed approximately 800 pounds and, obviously, required a reasonable time to remove. Moreover, the tools were used for the benefit of the employer's business, and it was customary to allow employees two or three days to remove their tools.

Under the circumstances of this case and the fact that "The Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes", *Beth. Sp. Pt. Ship y'd v. Hempfield,* 206 Md. 589, 594, 112 A. 2d 488 (1955), we hold that if the employee sustained an accidental injury as alleged, it arose out of and in the course of his employment.

> *Judgment reversed, case remanded for a new trial, costs to be paid by appellee.*