[Civ. No. 39511. First Dist., Div. Three. Sept. 21, 1977.]

EDWARD MITCHELL, Jr., Plaintiff and Appellant, v.
ED HIZER et al., Defendants and Respondents.

VALERIE L. ROBBINS et al., Plaintiffs and Appellants, v.
ED HIZER et al., Defendants and Respondents;
ARGONAUT INSURANCE COMPANY, Intervener and Respondent.

ROBERT ROBBINS et al., Plaintiffs and Appellants, v.
ED HIZER et al., Defendants and Respondents.

**COUNSEL**

Seymour L. Ellison, Francis B. Mathews, David J. Crane, Robert McClain and Robert Partridge for Plaintiffs and Appellants.

Mitchell, Dedekam & Angell, Clifford B. Mitchell and Clayton R. Janssen for Defendants and Respondents.

No appearance for Intervener and Respondent.

**OPINION**

**GOOD, J.**\*—Following the death of John Robbins and serious injuries to Edward Mitchell, Jr., in a single accident, two tort actions were filed against Humboldt Fir Company and three of its employees. Consolidation was ordered as well as bifurcation of trial on issues of liability and damages. At the conclusion of the liability phase, the court, sitting without a jury, found that negligence of the defendants had proximately caused the injuries; that neither Robbins nor Mitchell had assumed the risk or were contributorily negligent; that at the time of the accident, their employment had been terminated but the injuries nevertheless arose out of and in the course of their employment and consequently the court was deprived of jurisdiction in the premises. (Lab. Code, § 3600 et seq.) Judgments were accordingly entered in favor of the defendants and the plaintiffs appealed.

The circumstances attendant upon the accident were as follows: Mitchell and Robbins had been hired by Humboldt Fir Company to fall timber growing on the right-of-way of a logging road then in the course of construction. They were paid $2.25 per thousand board feet cut. Eighty percent of this was considered wages and payroll and income taxes were withheld therefrom pursuant to W-4 forms signed by them. A separate check for the remaining 20 percent was issued and deemed to

---

\*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

be rental for their tools and equipment as well as fuels required on the job. They worked as a team splitting their earnings between them. Such arrangement was common and followed general practices in the lumber industry. Two other teams had been hired. Each team was assigned a segment of the right-of-way to clear and when that was completed would be sent to a new segment. In the last week of October, Mitchell and Robbins worked on Monday on the segment assigned to them but did not show up for work on the following days. Because the road construction equipment and crew were nearing their segment, defendant Ed Hizer, the "bull buck" or logging supervisor, became concerned about their absence and on Wednesday told Clark and Hostler, another team of fallers working on another segment, that if Mitchell and Robbins did not show on Thursday, he would give their segment to Clark and Hostler. However, Hizer later decided to give the absentees one more day and told Clark and Hostler that they would work the Mitchell-Robbins strip on Friday if that team did not report on Thursday.

On Friday morning, Mitchell and Robbins drove to the job site. Robbins had told his wife he was going to see if he still had a job. They stopped at a drive-in in Orleans about 7 a.m. for coffee. There, Mitchell told the proprietor that he was late for work and would be fired if he didn't get to work. He also told an acquaintance that they were going to the job site to pick up their tools because he assumed he had been fired and described a new job he had secured to begin on Monday. Mitchell testified that their trip to the job site had a dual purpose: They intended to pick up their tools and wanted to see if they could finish their segment. He also mentioned the new job for Monday but explained that logging remaining on their segment could be completed in a day or two. Further, he testified that his father had told him that Hizer had telephoned on Wednesday evening and said that if he didn't show up for work on Thursday he would be fired.

The accident occurred between 7:45 and 8 a.m. when their pickup truck approached a barricade tree that had been felled across the right-of-way. This was a customary warning that trees were being felled in the area. They had passed another barricade or sign about a half mile below the logging site that restricted use of road to "authorized personnel." Sometime after 7 a.m., Hizer had instructed Clark and Hostler to proceed with clearing on the Mitchell-Robbins segment. Hostler felled the barricade tree and proceeded to fall an 80-foot tree. He made cuts for the tree to fall parallel to the side of the right-of-way, but

in free fall the tree was deflected by other trees onto the right-of-way where it struck the pickup.

Appellants contend that Mitchell and Robbins had been discharged and were no longer employees subject to the Workers' Compensation Act. Upon conflicting evidence, the trial court found that their employment had been terminated. The parties concede the validity of the finding.[1] Respondents argue that workers' compensation coverage continued despite the termination of the employment because the purpose of their presence was to collect tools which were necessarily used in their work and, accordingly, Mitchell and Robbins were engaging in an act that was incidental to their employment. We have been unable to find any appellate decision in California that directly involves the status of a terminated employee vis-a-vis workers' compensation in the circumstances that attended the accident.

Section 3600 of the Labor Code provides that workers' compensation is the exclusive remedy against an employer for any injury to an employee that arises out of and in the course of employment. Section 3202 thereof requires that the provisions of the act "be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." *Peterson* v. *Moran* (1952) 111 Cal.App.2d 766 [245 P.2d 540] states that this "statutory injunction necessarily implies and requires that the courts shall conclude where the question is reasonably debatable that injuries sustained by persons injured in the course of their employment fall within and not without the purview of the statute." It further points out that the rule " 'is not altered because a plaintiff believes that he can establish negligence on the part of his employer and brings a civil suit for damages.' " (*Id.;* p. 768.)

Generally, subsisting employment is a basic requirement for an injury to arise "out of and in the course of employment." (Cal. Const., art. XX, § 21.) *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1976) 59 Cal.App.3d 647 at page 654 [130 Cal.Rptr. 831] holds that a job applicant is not an employee and " 'until such application is made and the party

---

[1] Both parties have devoted a portion of their briefs to the "going and coming" rule. That rule provides that injuries sustained by an employee while he is going to or returning from work are not compensable. (55 Cal.Jur.2d, Workmen's Compensation, § 83.) This rule has no application to the present case for two reasons: (1) it is conceded that Mitchell and Robbins were terminated employees; thus, they were not going to work; (2) it was specifically found by the trial court that Mitchell and Robbins were on the job site at the time of the accident. Thus, they were not in transit.

accepted, the relation of employer and employee is not established.' " (Cf. *Highway Com.* v. *Industrial Acc. Com.* (1919) 40 Cal.App. 465, 467-468 [181 P. 112]; *Sumner* v. *Edmunds* (1933) 130 Cal.App. 770, 778 [21 P.2d 159] and comment thereon in fn. 8 of *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 779 [100 Cal.Rptr. 377, 494 P.2d 1].)

A qualification to the rule of the necessity of a subsisting contract of employment exists under the rule of "tryout" cases such as *Laeng* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 771, and the cases cited and discussed at pages 774 and 777. *Laeng* states: "Workmen's compensation, of course, fundamentally proposes to protect individuals from any 'special risks' of employment; thus, when an employer, as part of a 'tryout' for an employment position, exposes an applicant under his control and direction to such risks, any resulting injury becomes properly compensable under the workmen's compensation law . . . . [¶] [A]n 'employment' relationship sufficient to bring the act into play cannot be determined simply from technical contractual or common law conceptions of employment but must be resolved by reference to the history and fundamental purposes underlying the Workmen's Compensation Act."

We have noted that the going and coming rule is not applicable herein. But cases involving the rule establish that employment includes " 'not only the doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done.' " (*Pacific Indem. Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 329, at p. 336 [170 P.2d 18].) That case and *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490 [47 Cal.Rptr. 384, 407 P.2d 296] involved vehicular accidents that occurred when an employee was making a left turn from a public highway onto his employer's private right-of-way. Because the left turn was necessary as a means of access to the job site, it was held to be within the "field of risk" created by the employment. The facts that the accidents happened either entirely or partially upon a public road and the danger was one to which the general public was also exposed did not make the accidents nonindustrial and compensation coverage was held to obtain. (Cf. *Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8, pp. 12-13 [118 P.2d 809].)

It has also been held that an employee who has been discharged and sustains injury while in the process of leaving the job site is still an

employee for the purpose of compensation coverage. (*Peterson* v. *Moran, supra,* 111 Cal.App.2d 766; *Stone* v. *Peabody* (1926) 13 I.A.C. 93; *Schaaf* v. *Beal* (1925) 12 I.A.C. 184.) The reasoning here was that the employee's presence on the job site was directly connected with the employment relationship and, being incident thereto, the employee was entitled to the protection of workers' compensation until he had left the premises. Similarly, in *Mauerhan* v. *Markowitz* (1921) 8 I.A.C. 261, where an employee was injured while gathering up his tools at the job site immediately after termination of his employment, it was held that he was entitled to compensation coverage.

California case law and administrative decisions establish fairly clear-cut rules to determine the issue when an employee is injured after termination of employment but while he is still on the job site. But where the injury occurs after he has left the job site or has returned thereto, decisions are less consistent and no clear-cut rule may be gleaned from them. Thus, *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1963) 221 Cal.App.2d 140 [34 Cal.Rptr. 206] and *Fireman's F. Indem. Co.* v. *Indus. Acc. Com.* (1932) 123 Cal.App. 142 [11 P.2d 1114] both involved terminated employees who had left the job site and were injured when they were en route to collect final paychecks. In *Argonaut,* the employee was terminated because the construction job had been completed and he was directed to pick up his check at a post office to which checks had theretofore been mailed. It was held that the accident arose in the course and scope of employment and his errand was for the employer's convenience. In *Fireman's Fund,* the employee quit and was given a time slip. He thereupon "hitched" a ride from the job site to a field office some distance away. He had not been directed thereto by his foreman. Compensation was denied because his errand was undertaken on his own initiative and not at the employer's direction. The difference in the facts as well as in the provisions of Labor Code sections 201 (wages due and payable immediately where an employee is discharged (or the job is shut down)) and 202 (wages due and payable not later than 72 hours after an employee quits unless 72 hours notice of his intention to quit has been given) explain the opposite conclusions in these cases. But in *Sloss* v. *Neame Oil Company* (1923) 10 I.A.C. 233 when an employee quit without notice and wished his pay, and had been directed to a superintendent's office some distance from the job site it was held that the employee was not acting in the course of his employment. In *Camera* v. *Connolly* (1934) 20 I.A.C. 59, the terminated employee returned to the job site to get his paycheck and to see if there was any more work. He also was denied workers' compensation.

In other jurisdictions, opposite conclusions have been reached in factual situations closely analogous to the case at bench. In *Parten v. State Industrial Court of State of Okl.* (Okla. 1972) 496 P.2d 114, an employee was simultaneously paid wages to date and discharged. He told his employer that he needed help to load his tools which had been used on the job. The employer agreed to help him the next day. He returned the next day and was injured while loading the tools onto his truck. The court held that he was not an employee covered by workers' compensation because his employment had been terminated. It reasoned that he was removing the tools for his own benefit and on his own time. But *Nails v. Market Tire Company, Inc.* (1975) 29 Md.App. 154 [347 A.2d 564] involved a virtually identical fact situation. It was there held that the employee was acting within the course and scope of employment even though the contract had previously been terminated. The court reasoned that the tools had been taken to the job site for the purpose of promoting the business of the employer; that the employment contract led to the tools being taken to the job site and also made it necessary for the employee to return to retrieve his property. Consequently, he was subjected to the hazard that caused his injury because of his status as an employee—a status that continued until he had a reasonable opportunity to regain possession of his tools. The *Nails* court rejected the rule of *Parten, supra,* and of the majority opinion in *Pederson & Voechting v. Kromrey* (1930) 201 Wis. 599 [231 N.W. 267], which upon similar facts held that the accident was not referable to the employment contract. It noted that the dissenting opinion in *Pederson* (the court split four to three) was more persuasive and convincing than the majority opinion. For reasons below set forth we agree with the Maryland court.

Larson, in 1 Workmen's Compensation Law, section 26.00 states: "Injuries incurred by an employee while leaving the premises, collecting pay, or getting his clothes or tools within a reasonable time after termination of the employment are within the course of employment, since they are normal incidents of the employment relation. Injuries before actual hiring are not compensable, but hiring is not deemed to depend on paper formalities such as signing the payroll and withholding slips." In section 26.40, Larson cites federal, New Mexico, New York and Ohio cases[2] in support of his proposition that a terminated employee who is collecting his personal effects after leaving employment is

[2](*Marra Bros. v. Cardillo* (E.D.Pa. 1945) 59 F.Supp. 368, affd. (3d Cir. 1946) 154 F.2d 357; *Brown v. Pot Creek Logging & Lumber Company* (1963) 73 N.M. 178 [386 P.2d 602]; *Moskowitz v. Granata* (1959) 9 App.Div.2d 977 [193 N.Y.S.2d 744]; *Parrott v. Industrial Commission of Ohio* (1945) 145 Ohio St. 66 [30 Ohio Ops. 284, 60 N.E.2d 660].)

performing a necessary incident of an orderly termination of the employment. Similarly, 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1977) section 9.02 [3] [3], pages 9-15/9-17, quotes the rule of *Pacific Indem. Co.* v. *Industrial Acc. Com., supra,* 28 Cal.2d at page 336 and states that "when an employee leaves work, then returns, and is injured while engaging in some activity reasonably attributable to the employment or properly incidental thereto, the injury is compensable." (Cf. *Laing* v. *Occidental Life Ins. Co.* (1966) 244 Cal.App.2d 811 [53 Cal.Rptr. 681].)

 Here, Robbins and Mitchell returned to the job site (a) to see if, notwithstanding their absence, they could resume employment and complete their segment and (b) to retrieve the logging equipment which they were required to furnish under trade custom and practice and had left at the job site. The trial court did not determine whether their discharge had occurred the day before the accident or on the morning thereof when Clark and Hostler were assigned to their segment. We do not deem this important because retrieving their property was both incident to and within the field of risk of the employment contract. We think the employment contract contemplated that they had a reasonable time after termination within which to secure the tools of trade which they provided and they were protected by the provisions of the Workers' Compensation Act when they were so doing.

It is true that if they had returned to the job site solely for the purpose of regaining their employment, they would be job applicants and not covered by compensation. (*State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd., supra,* 59 Cal.App.3d 647.) The fact that the trip had a dual purpose does not eliminate applicability of workers' compensation. (1 Larson, *supra,* §§ 18.00, 18.10, 18.12.) *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 221 Cal.App.2d 140 at page 144 states: "The status of an employee acting in the course of his employment is not destroyed by the fact that he may be pursuing a dual purpose. If he is carrying out some duty or right in connection with his employment, and combines with it an object of his own, he is still considered to be acting in the course of his employment. As is said in *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.,* 28 Cal.2d 756, 758-759 [172 P.2d 1]: [¶] '. . . where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer.' " Here, their errand at the

time of the accident was a necessary incident of their employment. Accordingly, the accident arose out of and within the course thereof. Since the conditions of workers' compensation obtained, the Workers' Compensation Act precludes a civil action against the employer and fellow employees. In view of the history and underlying purposes of the statute, the trial court was correct in its determination that it had no jurisdiction in the premises in the attendant circumstances.

The judgment is affirmed.

Draper, P. J., and Devine, J.,* concurred.

A petition for a rehearing was denied October 21, 1977, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied November 17, 1977.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.