823 A.2d 687

**Linda D. LIVERING**

v.

**RICHARDSON'S RESTAURANT and PMA Management Corporation.**

**No. 95, Sept. Term, 2002.**

Court of Appeals of Maryland.

May 9, 2003.

568

Gregory C. Bannon (Bannon & Balog, on brief), Hagerstown, for appellant.

Joseph F. Zauner, III (Leslie W. Gawlik, on brief), Baltimore, for appellees.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

This is a workers' compensation case involving the question of whether appellant's injury was one arising out of and in the

course of employment. The issue presented is whether appellant Linda Livering's accidental injury, suffered on a day off but while checking her work schedule at her place of employment, arose out of and in the course of her employment such that it is compensable under Maryland Workers' Compensation law. We shall hold that her injury arose out of and in the course of employment.

## I.

Richardson's Restaurant employed Livering as a salad preparer. Richardson's owner, Bobby Resh, posted the employee work schedule each Sunday, and the new schedule operated from the following Thursday. Resh had a "tendency" to change the work schedule. Employees would visit or call the restaurant to verify the schedule. If there were a schedule change, Richardson's would attempt to call or visit the affected employee, or failing that, work with the employees already on site or make do without additional help. Livering could not be called regarding schedule changes because she did not have a telephone.

According to Livering's testimony, she was not working on November 28, 2000, and was not scheduled to work but visited the restaurant to confirm her work schedule. In the three weeks of her employment prior to this day, Livering's schedule had changed at least twice. On one occasion, she was late for work when her employer changed her starting time from noon to 7:00 a.m., and her employer inquired into her tardiness. On the day of her injury, she and her boyfriend, James Morris, visited the restaurant while in the course of running personal errands; Morris ordered a cup of coffee at the bar, and Livering checked the work schedule posted in the kitchen. After speaking briefly in the bar area with co-employee, cashier, and day manager, Louise Rainey, Livering left the restaurant. As Livering and Morris exited, she slipped and fell on the ramp just outside the door, injuring her wrist. Morris drove her to the Washington County Hospital emergency room, where she was treated for a dislocated and broken wrist.

Livering filed a claim with the Maryland Workers' Compensation Commission. The Commission ruled that Livering did not sustain an accidental injury arising out of and in the course of employment. Livering then filed a petition for judicial review in the Circuit Court for Washington County and elected a bench trial. At trial, the parties disputed whether Livering actually checked her work schedule during her visit to the restaurant. The court found that Livering was not working on the day in question and that she had checked her work schedule on the employer's premises.[1] The Circuit Court affirmed the Commission, concluding that Livering "did not sustain an accidental injury arising out of and in the course of employment with Richardson's Restaurant, as defined under the Workers' Compensation law of Maryland."

Livering noted a timely appeal to the Court of Special Appeals. We granted certiorari on our own initiative prior to consideration by that court to consider whether Livering's accidental injury arose out of and in the course of her employment. *See Livering v. Richardson's*, 372 Md. 429, 813 A.2d 257 (2002).

## II.

Before this Court, Livering argues that the Circuit Court erred in concluding that her injury did not arise out of and in the course of her employment in accordance with Maryland Code (1991, 1999 Repl.Vol. & 2002 Supp.) § 9–101(b)(1) of the Labor and Employment Article.[2] She argues that checking her

---

1. Appellees argue to this Court that the Circuit Court did not find as a matter of fact that Livering checked her work schedule on the day of her injury. Appellees suggest that the Circuit Court's ruling that "even finding she did check her work schedule" should be read to say "even if finding." They contend, therefore, that the trial court did not find that Livering checked her work schedule but only assumed that fact *arguendo*. Read in context, we interpret the trial court's remark as a finding that Livering checked her work schedule during her visit to the restaurant.

2. Unless otherwise noted, all subsequent statutory references are to Maryland Code (1991, 1999 Repl.Vol. & 2002 Supp.) of the Labor and Employment Article.

schedule was incident to her employment, that while Richardson's Restaurant did not require employees to check their schedules, it acquiesced in the practice, and that her activity benefitted the restaurant. Therefore, her resulting injury arose out of and in the course of her employment.

Appellees Richardson's Restaurant and PMA Management Corporation argue that Livering's injury is not compensable. They note that not every injury that occurs on the employer's property is compensable and contend that there is no causal connection between Livering's work and her injury. In the main, they argue that her injury did not arise out of her employment because she was not required to visit the restaurant to verify her schedule; rather, her visit constituted a personal errand performed for her own convenience that did not benefit or involve the employer.

### III.

 In a workers' compensation claim, a party aggrieved by a decision of the Commission may petition the Circuit Court for judicial review. *See* § 9–737. In the judicial proceedings, the decision of the Commission is prima facie correct, and the party challenging that decision bears the burden of proof. § 9–745(b); *see also Martin v. Beverage Capital Corp.*, 353 Md. 388, 401–02, 726 A.2d 728, 735 (1999); *Sica v. Retail Credit Co.*, 245 Md. 606, 612, 227 A.2d 33, 36 (1967). The petitioner may request a trial which essentially is *de novo*. *See* § 9–745; *Holman v. Kelly Catering, Inc.*, 334 Md. 480, 484, 639 A.2d 701, 703 (1994). A reviewing court "shall reverse or modify the decision" of the Commission if the court determines that the Commission "did not act within its powers or did not correctly construe the law." § 9–745(e)(2); *see also Board of County Comm'rs v. Vache*, 349 Md. 526, 537, 709 A.2d 155, 160 (1998) (noting that a reviewing court "may reverse the Commission's decision when it is based on an erroneous conception of the law").

 The Maryland Workers' Compensation Act provides benefits to employees who suffer an accidental injury that

"arises out of and in the course of employment." § 9–101(b)(1); *see also* § 9–501 (requiring employers to compensate "the covered employee for an accidental personal injury sustained by the covered employee"). The Act essentially is remedial, social legislation designed to protect workers and their families from various hardships that result from employment-related injuries. *See Martin,* 353 Md. at 398, 726 A.2d at 733. It is a well-settled rule that "[t]he Workmen's Compensation Act should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Bethlehem–Sparrows Point Shipyard, Inc. v. Hempfield,* 206 Md. 589, 594, 112 A.2d 488, 491 (1955). Any uncertainty in the law should be interpreted in favor of the claimant. *See Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995); *Knoche v. Cox,* 282 Md. 447, 456, 385 A.2d 1179, 1183–84 (1978) (noting that the Court broadly interprets the term "arises out of").

The statute requires that the claimant satisfy two conditions precedent to bring a claim within the ambit of the Act—both "arises out of" and "in the course of" employment must be proven. *See Montgomery County v. Wade,* 345 Md. 1, 9, 690 A.2d 990, 994 (1997); *Pariser Bakery v. Koontz,* 239 Md. 586, 589, 212 A.2d 324, 326 (1965). Whether an injury arises out of and in the course of employment is determined by the facts and circumstances of each individual case. *Knoche,* 282 Md. at 454, 385 A.2d at 1182; *Sica,* 245 Md. at 611, 227 A.2d at 35–36.

"Arises out of" refers to the causal connection between the employment and the injury. An injury arises out of employment when it results from some obligation, condition, or incident of employment. *Wade,* 345 Md. at 9–10, 690 A.2d at 994. The phrase " 'arises out of' requires, not that the performance of an employment-related task be the direct or physical cause of the injury, but, more broadly, that the injury be incidental to the employment, such that it was by reason of the employment that the employee was exposed to the risk

resulting in the injury." *Mulready v. University Research Corp.*, 360 Md. 51, 57, 756 A.2d 575, 578 (2000).

Judge Rodowsky, writing for the Court in *Mulready*, examined the different tests sometimes employed in determining "arising out of" causation. He noted two tests— one known as the increased risk test and the other known as the positional-risk test. *Id.* at 59, 756 A.2d at 579. Explaining the difference between the two tests, he stated:

"The increased risk test requires that 'the employee be exposed to a quantitatively greater degree of risk than the general public.' Under the positional-risk test, 'an injury arises out of employment if it would not have occurred if the employee's job had not required him to be in the place where he was injured.' "

*Id.*, 756 A.2d at 579. The positional-risk test is a more liberal test than the increased risk test. *See id.* at 59, 756 A.2d at 579; *Montgomery County v. Smith*, 144 Md.App. 548, 557, 799 A.2d 406, 412 (2002). The positional-risk test is essentially a "but for" test. Professor Larson succinctly states the test as follows: "An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the employee] in the position where he [or she] was injured." A. Larson, *Workers' Compensation Law* § 3.05 (2002); *see also* J.D. Ingram, *The Meaning of "Arising Out of" Employment in Illinois Workers' Compensation Law*, 29 J. Marshall L.Rev. 153, 158 (1995) (noting that under the positional-risk test "an injury is compensable if it would not have happened 'but for' the fact that the conditions or obligations of the employment put the claimant in the position where he was injured").

Maryland has adopted the positional-risk test to determine whether an injury arose out of employment. *See Mulready*, 360 Md. at 66, 756 A.2d at 583; *Wade*, 345 Md. at 11, 690 A.2d at 994; *Knoche*, 282 Md. at 455–57, 385 A.2d at 1183–84. In *Mulready*, in the context of a traveling employee, we noted that "[u]nder the positional-risk test, 'an injury arises out of employment if it would not have occurred if the employee's job

had not required him to be in the place where he was injured.'" 360 Md. at 59, 756 A.2d at 579. In that case, a traveling employee sustained an injury after slipping in a hotel bathtub. *Id.* at 53–54, 756 A.2d at 576. Mulready was staying in the hotel to conduct employer business but was not actively engaged in work at the time of her injury. The parties agreed that her injury occurred in the course of her employment but disputed whether it arose out of that employment. We reasoned that her personal act of bathing was reasonably incidental to the travel required by her employer. *Id.* at 66, 756 A.2d at 583. In effect, but for her travel, Mulready would not have been injured. We held that her injury, resulting from an incident of her employment, arose out of employment.

The positional-risk test also encompasses injuries that occur during activities incidental to employment that are not required specifically by the employment. In *Wade,* we applied the positional-risk test and held that a police officer's injury, suffered while participating in a voluntary police department program, arose out of employment. *See* 345 Md. at 9–11, 690 A.2d at 994. Officer Wade, while not on scheduled duty and while operating her personal patrol vehicle (PPV), was hit from behind by another vehicle and injured. Wade was on her way to her mother's home. Her employer, the Montgomery County Police Department, operated a program permitting, but not requiring, employees to utilize patrol vehicles for personal use, subject to certain conditions. We held that Wade's injury arose out of her employment because Wade "would not have been operating a PPV but for her employment and consequent participation in the program." *Id.* at 11, 690 A.2d at 994. We found the requisite causal link between her work and her injury in that her injuries stemmed from use of her police vehicle within departmental guidelines. *Id.,* 690 A.2d at 994.

"Aris[ing] out of" one's employment satisfies one part of the statutory requirement. A claimant must demonstrate in addition that the injury occurred "in the course of" his or her employment. In determining whether an injury

occurred "in the course of employment," we consider the time, place, and circumstances of the accident in relation to the employment. *Id.,* 690 A.2d at 995. An injury is in the course of employment "when it occurs during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto." *Id.,* 690 A.2d at 995; *see also Pariser Bakery,* 239 Md. at 590, 212 A.2d at 326. "In the course of employment" is not limited to "actual manipulation of the tools of work, nor to the exact hours of work." *Wade,* 345 Md. at 12 n. 6, 690 A.2d at 995 n. 6. In *Wade,* Judge Karwacki, writing for the Court, noted:

> "An analysis of the occupational correlation of these factors 'demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment.' Questions pertinent to this inquiry are: 1) when the employment began and ended, 2) whether the continuity of the period was broken, and 3) how far the employee placed himself or herself outside the employment during that period. Stated otherwise, an injury is in the course of employment when it occurs during the period of employment at a place where the employee reasonably may be in performance of his or her duties and while fulfilling those duties or engaged in something incident thereto. If the injury occurred at a point where the employee was within the range of dangers associated with the employment, it is held compensable under the Act."

*Id.* at 11–12, 690 A.2d at 995 (citations omitted).

In regard to the "in the course of" test, we find instructive those cases involving off-duty or post-termination injuries sustained while on-premises to collect wages or personal property. Maryland law recognizes that collecting wages and gathering personal effects are incidents of employment and that on-premises injuries suffered while performing these activities may occur in the course of employment. *See Consolidated Eng'g Co. v. Feikin,* 188 Md. 420, 52 A.2d 913 (1947); *Nails v. Market Tire Co.,* 29 Md.App. 154, 347 A.2d

564 (1975). Professor Larson echoes this notion, stating that "[i]njuries incurred by an employee while leaving the premises, collecting pay, or getting his clothing or tools within a reasonable time after termination of the employment are within the course of employment, since they are normal incidents of the employment relation." A. Larson, *supra*, at § 26.00.

In *Consolidated Engineering Co. v. Feikin*, 188 Md. 420, 52 A.2d 913 (1947), the claimant was a day laborer paid only for the hours he actually worked. After claimant returned to his job following an illness, he was assigned to the hot strip mill but worked only one day. He returned on Friday not intending to work but instead to pick up pay for one day's work. The company distributed pay slips in the morning but required workers to pick up their wages in the afternoon. After receiving his pay slip, claimant went to the mill and asked the location of the gang he had worked with on Monday. Approximately forty-five minutes later, he was found on the floor of the mill, severely burned. We adopted the following rule: "a contract of employment is not necessarily terminated when the actual work ceases, but may continue until the workman's wages are paid." *Id.* at 425, 52 A.2d at 916. We noted that appearing at a place of employment for wages constitutes part of the employment contract and therefore is an incident of employment. *See id.* at 426, 52 A.2d at 916–17. This Court reversed the trial court's directed verdict and remanded for a new trial because the evidence was not sufficient for a ruling as a matter of law that the injury arose out of and in the course of the employment. We left open the possibility that the jury could infer that the claimant, on a day off, visited the hot strip mill on some matter in connection with his employment rather than only to socialize with other workers, thereby entitling him to compensation. *See id.* at 427–28, 52 A.2d at 917.[3]

---

**3.** Many states agree that injuries incurred while collecting wages at a place of employment may arise out of and in the course of employment. *See, e.g., Crane Co. v. Indus. Comm.,* 306 Ill. 56, 137 N.E. 437, 438–39

In *Nails v. Market Tire Co.*, 29 Md.App. 154, 347 A.2d 564 (1975), a claimant was terminated from his position as head mechanic. Two days later, he returned to the company to pick up his tools that he had furnished as a condition of his employment. It was customary for employees to have two or three days to retrieve tools following termination. As the claimant removed his heavy tools, he injured his back. The Court of Special Appeals likened the employee's removal of his personal effects on termination to the collection of wages. *Id.* at 155–58, 347 A.2d at 565–66. Both activities, the court reasoned, are incidents of employment because they comprise part of the employment contract—they are necessary preparations for the orderly termination of employment. *Id.* at 156–58, 347 A.2d at 565–66. The intermediate appellate court held that the claimant's injury, sustained while removing his personal effects within a reasonable time after his termination, arose out of and in the course of his employment. *Id.* at 160–61, 347 A.2d at 567–68.

Checking a work schedule is similar to collecting a paycheck or removing personal effects. Collecting a paycheck and removing personal effects are essential to ending one's status as an employee; checking one's schedule is essential to continuing one's status as an employee. Checking a schedule may exhibit a stronger connection with employment because the employee-employer relationship is ongoing rather than coming to a close. Checking a work schedule is a part of one's duties; appearing to perform work comprises a fundamental aspect of an employment relationship. Checking a work schedule—like collecting wages and personal effects—is incident to employment.

(1922); *Dunlap v. Clinton Valley Ctr.*, 169 Mich.App. 354, 425 N.W.2d 553, 554 (1988); *Elmer E. Stockman, Jr., Constr. Co. v. Indus. Comm.*, 463 S.W.2d 610, 613 (Mo.Ct.App.1971); *Martinez v. Stoller*, 96 N.M. 571, 632 P.2d 1209, 1210 (1981); *Parrott v. Indus. Comm. of Ohio*, 145 Ohio St. 66, 60 N.E.2d 660, 663 (1945); *St. Anthony Hospital v. James*, 889 P.2d 1279, 1281 (Okl.App.1994); *Hoffman v. Workers' Comp. Appeal Bd.*, 559 Pa. 655, 741 A.2d 1286, 1288 (1999); *Texas Gen. Indem. Co. v. Luce*, 491 S.W.2d 767, 768 (Tex.Civ.App.1973).

In the instant case, we must determine whether Livering's injury arose out of and in the course of employment. Because many of the facts relevant to analyzing "arising out of" and "in the course of" overlap in this particular case, we shall consider the two tests together. Arriving for work on time and on the days she was expected to work constituted part of Livering's duties as a restaurant employee, and checking her schedule was a necessary component of those duties. Richardson's had a tendency to change the weekly schedule. The employer neither required nor prohibited employees from visiting the establishment to check the schedule, but it knew about and acquiesced in the custom. Moreover, by unexpectedly changing the work schedule, the employer impliedly required employees constantly to be aware of it. Because Livering did not have a telephone in her home, she checked her schedule either by telephoning the restaurant from elsewhere or by visiting in person. She had last worked on Sunday and had seen the schedule at that time. On the following Tuesday, the day in question, Livering visited the restaurant to ensure there had been no changes. Checking her schedule was therefore incident to her employment, and her injury resulted because of her employment. She would not have been injured but for the fact that she visited the restaurant to confirm her schedule. Not only was she checking her schedule at the time of the injury, but she also was hurt on the restaurant's premises. There is a clear nexus between her work and the injury. Because appellant's injury occurred on the employer's premises while performing, and as a result of, a task incident to her employment, we hold that her injury arose out of and in the course of employment.

Appellees maintain that, even though Livering was injured on the premises, she was on a personal errand for her own convenience that in no way involved her employer, thereby taking the injury beyond the scope of the Act. In this case, the record shows that Livering suffered an injury while on her employer's premises to check her schedule. She was not on a purely personal errand for her own convenience; under the circumstances, checking her schedule when there was a rea-

sonable chance that the schedule had changed benefitted her employer and was an incident of her employment. Accordingly, we reverse the judgment of the Circuit Court and hold that Livering's accidental injury arose out of and in the course of employment.

*JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED AND CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE WORKERS' COMPENSATION COMMISSION AND REMAND THE CASE TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY APPELLEES.*

Judge CATHELL concurs in the judgment only.