## LOUIS MAZZONE *v.* CONNECTICUT TRANSIT COMPANY
## (15599)

Callahan, C. J., and Berdon, Katz, Palmer and Peters, Js.

Argued March 21—officially released May 13, 1997

*Francis X. Drapeau,* for the appellant (plaintiff).

*John M. Walsh, Jr.,* for the appellee (defendant).

*Opinion*

PETERS, J. The principal issue in this appeal is the compensability, under the Workers' Compensation Act (act),[1] of an injury to an employee that occurred on an employer's premises during an unpaid lunch break. The claimant, Louis Mazzone, appealed from a decision of the compensation review board (review board) that had affirmed the decision of the workers' compensation

---

[1] General Statutes §§ 31-275 through 31-355a.

commissioner (commissioner) denying the claimant's application for workers' compensation benefits. We transferred the claimant's appeal from the Appellate Court to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the decision of the review board and remand the case for further evidentiary proceedings.

The commissioner found the following facts, which are not disputed. The claimant is employed by the defendant, the Connecticut Transit Company, as a heavy duty mechanic. At the time of his injury, the claimant was assigned to work the day shift and was allotted, as part of that shift, an unpaid thirty-five minute lunch period, extending from 11:55 a.m. to 12:30 p.m. During this lunch period, the claimant was required to "punch out" on the time clock. Although the defendant provided a small lunchroom for its employees, the claimant and several of his coworkers usually chose to eat their lunches in unoccupied, out of service buses parked on the defendant's premises. The defendant was aware of this practice.[2]

During his lunch break on the day of his injury, the claimant and his coworkers were eating their lunches in one such out of service bus. After inadvertently spilling milk, the claimant attempted to exit the bus in order to obtain a paper towel. While he was descending the rear steps of the bus, he fell to the pavement and was injured. As a result of these injuries, the claimant submitted a claim for workers' compensation benefits. See General Statutes § 31-294c (a) (establishing procedure for submission of claim).

Following an evidentiary hearing, the commissioner determined that the claimant's injuries were not com-

---

[2] Specifically, the commissioner found that "[t]here is no issue in regard to the fact that the [defendant] was aware that some employees ate their lunch on unoccupied buses in the yard." The commissioner also noted,

pensable under the act. In so ruling, the commissioner drew two critical conclusions from the facts found: first, that, at the time of his injury, the claimant "was off the time clock and free to leave" and, therefore, not within the period of employment; and second, that the claimant "was not doing anything while on his lunch break in furtherance of the employer's business or incidental to it."[3] The claimant appealed from the commissioner's decision to the review board; see General Statutes § 31-301; which, on the basis of the facts found by the commissioner, affirmed the commissioner's decision. In its written decision, the review board restated the commissioner's key conclusions and determined that those conclusions were not contrary to the law establishing eligibility for workers' compensation. See *McNamara v. Hamden*, 176 Conn. 547, 550–51, 398 A.2d 1161 (1979). This appeal followed.

On appeal, without challenging the factual findings made by the commissioner, the parties dispute the propriety of the review board's legal conclusion that the claimant had failed to establish a compensable injury. A close examination of the record reveals that, in accordance with the applicable law of compensation eligibility, this broad compensability issue turns on the resolution of three narrower questions: (1) whether the claimant was within the period of his employment during the unpaid lunch break taken on the defendant's premises; (2) whether the claimant, by choosing to eat lunch on an out of service bus, was in a place in which he reasonably was entitled to have been; and (3) whether the claimant, in eating lunch, was engaged in an activity incidental to his employment. See id. We conclude that, as a matter of law, questions one and

however, that the defendant "denie[d] that the use of unoccupied buses by employees for lunch breaks is a sanctioned practice."

[3] At oral argument, the defendant agreed that these were the two crucial conclusions drawn by the commissioner.

three must be answered in the affirmative and, consequently, reverse the decision of the review board. Because, however, the answer to question two depends on a question of fact with respect to which the findings of the commissioner are not sufficiently clear, we remand this matter for further evidentiary proceedings.

Our standard of review in workers' compensation cases is well established. "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Although a claimant has a statutory right to appeal an adverse decision to the review board, the review board's scope of review is limited. *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996) (review board does not conduct de novo hearing). It "may take additional material evidence . . . only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and 'not retry the facts.' " *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988); see also General Statutes § 31-301 (b) (describing scope of review).

As is the standard of review, the law governing eligibility for workers' compensation is also well established. "It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed *arose out of* the employment and *occurred in the course of* the employment. There must be a conjunction of [these] two requirements . . . to permit compensation." (Emphasis added; internal quotation marks omitted.) *McNamara* v. *Hamden*, supra, 176 Conn. 550. The former requirement relates to the origin and cause

of the accident, while the latter requirement "relates to the time, place and circumstances of the accident." Id.

In this case, as in *McNamara*, "it appears that the parties, the commissioner, and the [review board] have implicitly treated the injury sustained as one 'arising out of' the employment, and their focus on this appeal has been on the 'in the course of' employment aspect of the test." Id. Although the parties repeatedly recite both parts of the test in support of their respective arguments, their unelaborated references to the "arising out of" language are merely incidental to the issue that lies at the crux of their dispute, and at the heart of the commissioner's and the board's decisions, namely, whether the claimant was "in the course of his employment" at the time of his injury. "Thus, we will confine our discussion and review to that element in deciding this case." Id.

In order to establish that his injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place "(a) within the period of the employment; (b) at a place [he] may reasonably [have been]; and (c) while [he was] reasonably fulfilling the duties of the employment or doing something incidental to it." Id., 550–51; see also *Spatafore* v. *Yale University*, 239 Conn. 408, 418, 684 A.2d 1155 (1996); 1 A. Larson & L. Larson, Workmen's Compensation (1996) § 14.00, p. 4-1. These three parts of the required proof of the "in the course of employment" test correspond, respectively, to the "time, place and circumstances of the accident." See *McNamara* v. *Hamden*, supra, 176 Conn. 550.

In this case, the commissioner and the review board concluded that the claimant had failed to satisfy the first part of this test because his accident had taken place while he had been "on an unpaid lunch break." They also concluded that the claimant had failed to

satisfy the third part because, at the time of his accident, he had been eating lunch and, therefore, was "not doing anything . . . incidental to" his employment. We disagree, as a matter of law, with both of these conclusions.

With respect to the time requirement portion of the "in the course of employment" test, we previously have held that "[t]emporary suspension of work by an employee for a permitted rest period, or lunch hour, or for satisfying the wants of nature . . . have not been generally held sufficient to break the continuity of the employment." *Vitas* v. *Grace Hospital Society*, 107 Conn. 512, 515, 141 A. 649 (1928). Contrary to the position of the defendant, it is not dispositive that the claimant was officially "off the clock" and "on his own time" at the moment of his injury. Where, as here, a lunchtime injury takes place on the employer's premises, that injury may be said to have occurred "in the course of employment, even though the [lunch] interval is technically outside the regular hours of employment in the sense that the worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he pleases." 1A A. Larson & L. Larson, supra, § 21.21 (a), p. 5-6. Under these circumstances, an employee is as much within the period of employment as was the employee in *McNamara* who, while playing a game of ping-pong, off the clock, five minutes prior to the work day, suffered a compensable injury. *McNamara* v. *Hamden*, supra, 176 Conn. 551 ("[t]he exact time [of injury] is not significant" for purposes of compensation, as long as injury takes place on premises and in close temporal proximity to work day); see also *Hughes* v. *American Brass Co.*, 141 Conn. 231, 234, 104 A.2d 896 (1954) (injuries coming and going to work may be within period of employment regardless of fact that they occur before work begins). We conclude, accordingly, that the claimant's unpaid lunch break occurred

within the "period of employment" and thus satisfies the first part of the "in the course of employment" test.

With respect to the third part of this test, the circumstances requirement, we also previously have held that "[e]ating in the lunch hour, and other personal acts . . . *are incidental* to the employment . . . ." (Emphasis added.) *Vitas* v. *Grace Hospital Society,* supra, 107 Conn. 516. Contrary to the position of the defendant, it is not dispositive that the activity of eating lunch did not further the claimant's employment directly. "Acts of ministration by a servant to himself, such as . . . relieving his hunger . . . performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment [within the act] though they are only indirectly conducive to the purpose of the employment." (Internal quotation marks omitted.) *Lovallo* v. *American Brass Co.,* 112 Conn. 635, 639, 153 A. 783 (1931); see also *Vitas* v. *Grace Hospital Society,* supra, 107 Conn. 516 (eating lunch on employer's premises is for "mutual benefit and convenience" of employee and employer). It would be illogical to hold that, if they occur on the employer's premises, injuries related to such employer sanctioned activities as playing ping-pong; *McNamara* v. *Hamden,* supra, 176 Conn. 547; or smoking; *Puffin* v. *General Electric Co.,* 132 Conn. 279, 43 A.2d 746 (1945); are incidental to employment, while injuries associated with the equally sanctioned activity of eating lunch are not.[4] We conclude, accordingly, that the claimant has established that the activity of eating lunch, out of which his injuries reasonably arose, was incidental to his employment. He has, therefore, satisfied the third prong of the "in the course of employment" test.[5]

[4] We express no opinion on the compensability of a lunchtime injury on the employer's premises that results from activities that the employer has not permitted. In the present case, there is no dispute that the defendant permitted its employees to eat lunch during the lunch break.

[5] Contrary to the defendant's argument, the fact that the claimant was, at the time of his injury, getting up to get a paper towel rather than getting

In view of our conclusion that the claimant has satisfied the first and third parts of this test, we cannot sustain the decisions of the commissioner and the review board on the grounds upon which they were rendered. This determination, however, does not end our inquiry. Because a lower court or administrative decision may be affirmed on any available alternate ground; see *Bernstein* v. *Nemeyer*, 213 Conn. 665, 669, 570 A.2d 164 (1990); we must also determine if, on the record before us, the claimant has satisfied the second part of the "in the course of employment" test by proving that, at the time of his injury, he was "at a place [he] may reasonably [have been]." *McNamara* v. *Hamden*, supra, 176 Conn. 551.

We begin by noting that, under this part of the "in the course of employment" test, the claimant cannot prevail simply by proving that he was on the employer's premises at the time of his injury. Because an employer retains the right to prohibit its employees from entering certain parts of the employment premises, the claimant in this case, in order to be eligible for compensation, must have had a right to be on the out of service bus when his accident occurred. See 1A A. Larson & L. Larson, supra, § 21.21 (d), p. 5-18 ("there is no magic in being on the premises, if the employee is injured by getting in to places where he has no right to go"). We conclude that the claimant had such a right only if the defendant had either approved of or acquiesced in the claimant's presence on an out of service bus during the lunch time period. Cf. *McNamara* v. *Hamden*, supra, 176 Conn. 555 (requiring employer acquiescence under third part of "in the course of employment" test).

---

up to go back to work does not undermine this conclusion. In *McNamara*, for example, we held that an injury associated with playing ping-pong was compensable, despite the fact that, at the time of his accident, the injured employee was in the middle of a game and not in the process of going to work. *McNamara* v. *Hamden*, supra, 176 Conn. 549.

Predictably, the parties dispute the question of the defendant's approval or acquiescence to lunching on one of its out of service buses. The defendant contends that it had a policy pursuant to which employees were not permitted to board unoccupied buses during their lunch hour and that the claimant was in violation of this policy at the time of injury. The claimant, however, contends that the defendant had acquiesced in the practice of boarding unoccupied buses by failing, over the course of many years, to put a stop to the practice.

We conclude, in light of the ambiguity of the record before us, that the answer to this question turns on an unresolved issue of fact. In relevant findings, the commissioner stated only that "the [defendant] was *aware* that some employees ate their lunch on unoccupied buses in the yard."[6] (Emphasis added.) Whether this awareness constitutes tacit approval or acquiescence sufficient to render an out of service bus a "reasonable" place for the claimant to have eaten his lunch poses an issue of fact that the commissioner did not resolve. Although the claimant asks us to infer acquiescence, we decline to enlarge the proper scope of our appellate review either by finding facts or by drawing inferences from the facts actually found. See *Besade* v. *Interstate Security Services,* supra, 212 Conn. 449 (function of commissioner to find facts); see also *State* v. *Bruno,* 236 Conn. 514, 546, 673 A.2d 1117 (1996) (fact finder draws inferences from facts).

"Ordinarily, [when the record is unclear] the appellant has the responsibility to seek an articulation by the [commissioner] in order to furnish an adequate appellate record." *Lauer* v. *Zoning Commission,* 220 Conn. 455, 471 n.16, 600 A.2d 310 (1991); see also Prac-

---

[6] The commissioner also noted, without stating a clear finding, that the defendant had claimed not to have sanctioned the use of out of service buses during the lunchtime period. See footnote 2.

tice Book § 4007 (burden on appellant to provide adequate record for review). We decline, however, to dispose of this appeal on the basis of the claimant's failure to request such an articulation. In his written decision, the commissioner focused only on the first and third parts of the "in the course of employment" test. The claimant, therefore, reasonably could have assumed that, having denied his claim for compensation on the basis of the first and third of three available grounds, the commissioner implicitly had determined that the claimant had satisfied the second ground or implicitly had decided that the second ground was not an issue. Although we now conclude that the second part of the "in the course of employment" test *is* an important, unresolved issue[7] and that the commissioner's finding regarding that part is too ambiguous to serve as a basis for appellate review, this deficiency in the administrative record would not necessarily have been immediately apparent to the claimant. See *Lauer* v. *Zoning Commission*, supra, 471 n.16. Under these circumstances, we choose to exercise our authority pursuant to the rules of practice; see Practice Book § 4061;[8] to remand this matter for further articulation by the commissioner with respect to whether the claimant, at the time of his injury, was at a place where he reasonably was entitled to have been.

The judgment is reversed and the case remanded to the review board with direction to remand it to the commissioner for further proceedings according to law.

In this opinion the other justices concurred.

[7] This importance is demonstrated by the defendant's concession, at oral argument, that, if the claimant's injury had in fact taken place in an authorized location, such as a designated lunchroom, the factual scenario would be virtually indistinguishable from that in *McNamara*, a case in which we held an employee's injuries compensable.

[8] Practice Book § 4061 provides in relevant part: "If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation . . . ."