### CZESLAW HERMAN *v.* SHERWOOD INDUSTRIES, INC., ET AL.
### (SC 15836)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

Argued February 18—officially released April 21, 1998

---

*Daniel A. Silver,* for the appellant (claimant).

*Joseph E. Skelly, Jr.,* for the appellees (respondents).

*Opinion*

PETERS, J. The Workers' Compensation Act (act); General Statutes § 31-275 et seq.;[1] provides coverage for an injury suffered by a worker "in the course of his employment." The issue in this appeal is whether a worker qualifies for such coverage if he is injured immediately after the termination of his employment, while still at his former employer's place of business. We conclude that, in the circumstances of this case, such an injury is compensable.

The claimant, Czeslaw Herman, filed a claim for workers' compensation benefits for injuries that he allegedly had received, immediately after his discharge from employment, as a result of retrieving a box containing his personal tools from the loading dock of his former employer, the respondent Sherwood Industries,

---

[1] General Statutes § 31-275 (1) provides in relevant part: " 'Arising out of and in the course of his employment' means an accidental injury happening to an employee or an occupational disease of an employee originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer . . . ."

Inc. (Sherwood).[2] Ruling on the basis of stipulated facts, the workers' compensation commissioner for the sixth district (commissioner) decided that, at the time of the claimant's injury, he was on Sherwood's premises "within the course of his employment." On appeal, however, the compensation review board (board) reversed, concluding that the claimant was ineligible for workers' compensation benefits. The claimant appealed to the Appellate Court and we transferred his appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).[3] We reverse the decision of the board.

There is no factual dispute. For nine years, Sherwood had employed the claimant as a machinist. During his employment, the claimant kept some of his own tools at Sherwood's place of business to supplement those supplied by Sherwood.

On July 8, 1994, Sherwood terminated the claimant's employment. On the afternoon of the same day, the claimant attended a termination meeting at Sherwood's personnel office. At that meeting, Sherwood's personnel officer conducted an exit interview and gave the claimant a layoff slip and a copy of an exit interview check list. Also at the termination meeting, the personnel officer informed the claimant that he could retrieve his personal tool box from the Sherwood loading dock, where it had been placed by Sherwood's foreman. Thereafter, in order to retrieve his tool box, the claimant was escorted from the personnel office to the loading dock, which stands about four to five feet high. The

[2] In all the relevant proceedings, the respondents included not only Sherwood but also The Hartford Insurance Group. Because the respondents have filed a joint brief in this court that contains nothing to suggest a diversity of interest between them, we will refer to them, in the singular, as Sherwood.

[3] General Statutes § 51-199 (c) provides in relevant part: "The Supreme Court may transfer to itself a cause in the Appellate Court. . . ."

claimant alleges that he suffered a lumbar spine injury while he was lifting his tool box off the loading dock.

On appeal to this court, the claimant challenges, on two grounds, the board's determination of his ineligibility for workers' compensation benefits. He argues that: (1) his injury arose in the course of his employment with Sherwood as that term is defined by § 31-275 (1) and our case law; and (2) that his case is factually distinguishable from the decision of the Appellate Court in *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, 27 Conn. App. 800, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993). Sherwood disputes these contentions and urges us to recognize and implement a general legislative policy, manifested specifically by the 1993 enactment of § 31-275 (16) (B) (i) and (iii),[4] that the definition of "scope of employment" must be construed narrowly. We agree with the arguments presented by the claimant and are unpersuaded by Sherwood's policy argument in the present context.

The parties do not contest the underlying principle of workers' compensation law that we must apply to the facts of this case. A claimant who asserts that he or she is entitled to workers' compensation bears the burden of proving that the injury: (1) arose out of the employment; and (2) occurred in the course of the employment within the meaning of § 31-275 (1). *McNamara* v. *Hamden*, 176 Conn. 547, 550, 398 A.2d 1161

---

[4] General Statutes § 31-275 (16) (B) provides in relevant part: " 'Personal injury' or 'injury' shall not be construed to include:

"(i) An injury to an employee which results from his voluntary participation in any activity the major purpose of which is social or recreational, including, but not limited to, athletic events, parties and picnics, whether or not the employer pays some or all of the cost of such activity . . .

"(iii) A mental or emotional impairment which results from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination."

(1979);[5] see also *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792, 694 A.2d 1230 (1997). "The former requirement relates to the origin and cause of the accident, while the latter requirement 'relates to the time, place and [circumstance] of the accident.'" *Mazzone* v. *Connecticut Transit Co.*, supra, 792–93.

In this case, as in both *McNamara* and *Mazzone*, the claimant, Sherwood and the board have focused on the second part of the test. "Although the parties repeatedly recite both parts of the test in support of their respective arguments, their unelaborated references to the 'arising out of' language are merely incidental to the issue that lies at the crux of their dispute, and at the heart of the commissioner's and the board's decisions, namely, whether the claimant was 'in the course of his employment' at the time of his injury. 'Thus, we will confine our discussion and review to that element in deciding this case.'" Id., 793.

An injury occurs in the course of the employment if it takes place: (1) within the period of the employment; (2) at a place the employee reasonably may be; and (3) while the employee reasonably is fulfilling the duties of the employment or doing something incidental to it. Id., 791. Only the first and third factors of the "course of employment" test are at issue in this case. The second prong of the test is satisfied by the undisputed fact that Sherwood's loading dock was a place where Sherwood reasonably could expect to find its employees.[6] Accordingly, we need decide only the remaining issues, namely,

---

[5] We recognize that the enactment of § 31-275 (16) (B) (i) raises questions about the continued viability of the *McNamara* decision with respect to the facts of that case. See remarks of Representative Lucien A. Dimeo on House Bill 7172, enacted as Public Acts 1993, No. 93-228. 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6201–6202. Nevertheless, the general principles outlined in that opinion are still applicable.

[6] At oral argument, Sherwood's counsel conceded that, following his discharge, the claimant remained on Sherwood's premises with the status of licensee, and perhaps even had the status of a business invitee. It is not

whether: (1) the claimant's alleged posttermination injury occurred within the period of his employment with Sherwood; and (2) the claimant's removal of his tool box was an activity incidental to his employment with Sherwood. Contrary to the board, we conclude that, in the circumstances of this case, both of these issues should be decided in favor of the claimant.

I

The first issue that we must resolve is whether the claimant's alleged injury occurred within the period of his employment by Sherwood. In determining that it did not do so, the board relied principally on a decision of the Appellate Court. *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, supra, 27 Conn. App. 800. In addition, it concluded that the enactment of § 31-275 (16) (B) (iii) manifested a legislative policy favoring a narrow construction of the "scope of employment" period. Finally, it observed that ineligibility for workers' compensation did not leave the claimant without a remedy because he could seek damages by filing a personal injury action sounding in negligence. We are persuaded that *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, supra, 800, does not control this case.

*Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, supra, 27 Conn. App. 800, arose in the context of a plaintiff's tort action claiming negligent infliction of emotional distress arising from the manner in which his employment had been terminated by the defendant. The Appellate Court determined that the plaintiff's tort claim could proceed because it was not barred by the exclusivity provision of the act. Id., 807. The court noted that "the plaintiff alleged that his emotional distress arose out of his discharge, not out of the conditions of

_____

easy to reconcile this concession with Sherwood's argument that, at the moment of the termination of the claimant's employment, he ceased being an employee.

his employment. Thus, the earliest time that the plaintiff's injury could have arisen was immediately after his discharge. It is impossible for the injury to have arisen during the period of his employment because his employment necessarily terminated before the alleged injury arose." Id., 808.[7]

The factual circumstances of the physical injury allegedly sustained by the claimant distinguish it from the circumstances of *Fulco*. We are not adjudicating the validity of a claim for compensation because of a delayed psychological reaction to the fact of discharge from employment. The claimant in this case was retrieving tools used on the job from the employer's work site at a time that was in close temporal proximity to the termination of his employment. If we were to conclude that "the period of employment" ends abruptly and categorically at the instant of discharge from employment, we would be doing violence to the humanitarian purpose of the act. See *Gil* v. *Courthouse One*, 239 Conn. 676, 682, 687 A.2d 146 (1997); *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992); *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992). Pursuant to the act and our decisions, the period of time during which the claimant allegedly was injured does not deprive him of the protection of his workers' compensation safety net.

Authority from other jurisdictions supports the conclusion that we have reached. Courts around the country have held that "an employee who has been discharged and sustains injury while in the process of leaving the job site is still an employee for the purpose of compensation coverage." *Mitchell* v. *Hizer*, 73 Cal. App. 3d 499, 504–505, 140 Cal. Rptr. 790 (1977). In the case of a roofer who was injured falling off of a plank

---

[7] The decision of the Appellate Court in *Fulco* was codified by the 1993 enactment of § 31-275 (16) (B) (iii).

walkway, immediately after he had been discharged, the Oklahoma Supreme Court concluded that the roofer was entitled to workers' compensation. The court noted that "the employee generally is held to be within the course of employment for a reasonable period while he finishes his affairs and leaves the premises." *Leonhardt Enterprises* v. *Houseman*, 562 P.2d 515, 518 (Okla. 1977). Similarly, the Oregon Court of Appeals held that an employee was entitled to compensation for an injury incurred when he slipped and fell in the employer's parking lot while leaving the premises after he had been discharged. *Liberty Northwest Ins. Corp.* v. *Rodriguez*, 97 Or. App. 500, 502, 776 P.2d 588 (1989).

Professor Arthur Larson has discussed the rationale for the rule adopted by these courts. He writes that "[c]ompensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee." 2 A. Larson & L. Larson, Workers' Compensation (1997) § 26.10, p. 5-329. Rather, "[h]e or she is deemed to be within the course of employment for a reasonable period while winding up his or her affairs and leaving the premises." Id.

Accordingly, we are persuaded that a claimant is entitled to workers' compensation for an injury that was incurred while leaving the job site immediately after the termination of his or her employment.[8] Under the

---

[8] The facts of this case do not require us to consider the more difficult question of whether an injury is compensable if it is incurred when a discharged employee *returns* to the job site. There is authority for the proposition that such an injury is compensable if industry custom allows a discharged employee to return to pick up his or her paycheck on a designated day, or to retrieve his or her personal belongings. See *Nails* v. *Market Tire Co.*, 29 Md. App. 154, 347 A.2d 564 (1975) (holding compensable injuries sustained when employee returned to employer's premises two days after employment had been terminated in order to retrieve personal tools and tool box); *Parrott* v. *Industrial Commission of Ohio*, 145 Ohio St. 66, 70, 60 N.E.2d 660 (1945) (holding that injury incurred when employee returned to retrieve paycheck six days after employment had been terminated

facts of this case, this claimant's injury occurred during the period of his employment.[9]

## II

We next consider whether the claimant's alleged injury occurred in the course of an activity incidental to his employment. In *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 791,[10] we stated that employer-sanctioned activities are incidental to employment if they occur on the employer's premises and if they contribute to the benefit and convenience of both the employer and the employee. Id., 795. Thus, we concluded that an employee eating lunch was engaged in a compensable activity incidental to his employment. Id. We reasoned that "[a]cts of ministration by a servant to himself, such as . . . relieving his hunger . . . performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment . . . though they are only indirectly conducive to the purpose of the employment." (Internal quotation marks omitted.) Id. In particular, we noted that the mutually beneficial activity at issue had been *permitted* by the employer. Id., 795 n.4.

In light of this authority, the claimant has demonstrated factually that he was engaged in an activity incidental to his employment. With Sherwood's acquiescence, he kept his tools at Sherwood's premises for the mutual benefit of both parties, but principally in order

occurred in course of employment); see also A. Larson, supra, § 26.31, pp. 5-348–5-352, and § 26.40, pp. 5-358–5-361.

[9] Having decided that the claimant's injury arose out of and in the course of his employment within the meaning of § 31-275 (1), we necessarily conclude that he also was still acting as an employee within the meaning of § 31-275 (9) (A) (i), which provides in relevant part that an "employee" is any person who "[h]as entered into or works under any contract of service or apprenticeship with an employer . . . ."

[10] This court's opinion in *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 788, was not available to the board at the time that it rendered its decision in this case.

to perform work for Sherwood. In accordance with instructions from Sherwood's personnel officer, he undertook to retrieve these tools from the Sherwood loading dock. Sherwood has not argued and the record does not indicate that Sherwood presented him with any other alternative for regaining his tools, such as having them delivered to his home at Sherwood's expense. On this factual record, we conclude that the claimant's retrieval of his tools was an activity incidental to his employment within the meaning of the act.

### III

Finally, we address briefly Sherwood's contention that, in construing "in the course of his employment," we must consider the policy implications of the 1993 legislative amendments of the act. Sherwood points specifically to § 31-275 (16) (B) (i), which bars compensation for injuries incurred during an employee's voluntary participation in a social or recreational activity, and to § 31-275 (16) (B) (iii), which bars compensation for mental or emotional impairment sustained as a result of demotion or termination. Public Acts 1993, No. 93-228, § 1. These enactments, it contends, demonstrate the legislature's intent that a worker's eligibility for compensation should now be construed narrowly.

We disagree with Sherwood's contention for two reasons. First, as a general matter, the humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation. *Gil* v. *Courthouse One*, supra, 239 Conn. 682; *Weinberg* v. *ARA Vending Co.*, supra, 223 Conn. 341; *Dubois* v. *General Dynamics Corp.*, supra, 222 Conn. 67. Second, "[a]lthough the parties have called our attention to the public policy implications of this case, the issue presented is, at bottom, a

matter of statutory construction." *Doe* v. *Stamford*, 241 Conn. 692, 697, 699 A.2d 52 (1997).

The legislative history of Public Acts 1993, No. 93-228 does not illuminate the dispute before us.[11] The very specificity of the amendments that the legislature chose to adopt counsels against drawing wide-ranging implications from their text. It is telling that, in § 31-275 (16) (B) (iii), the legislature excluded only specified kinds of injuries from the category of a "personal injury" allegedly resulting from an adverse personnel action, such as dismissal. Although the legislature excluded coverage for "a mental or emotional impairment" resulting from dismissals, it did not address physical injuries arising in the context of an employer's personnel action. Furthermore, in enacting § 31-275 (16) (B), the legislature did not narrow the broad definition of "personal injury" that is contained in § 31-275 (16) (A). Accordingly, we adhere to our previous holdings that we do not construe the act to impose limitations on benefits that the act itself does not specify clearly. *Doe* v. *Stamford*, supra, 241 Conn. 698; *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990).

In summation, we conclude that the claimant in this case sustained his alleged injury in the course of his employment within the meaning of § 31-275 (1). Despite Sherwood's formal termination of his employment, at the time of his accident, he was still within the period of his employment and his conduct in retrieving his tools from Sherwood's loading dock was incidental to his employment. In light of the facts, the applicable statutory language and our recent decision in *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 791, we are unpersuaded by the contrary decision of the board or by Sherwood's arguments to the same effect.

---

[11] The parties did not cite any legislative materials in their briefs.

The judgment of the board is reversed and the case is remanded to the board with direction to affirm the decision of the commissioner.

In this opinion the other justices concurred.