SHARON BROWN *v.* UNITED TECHNOLOGIES
CORPORATION, PRATT AND WHITNEY
AIRCRAFT DIVISION, ET AL.
(AC 29293)

Bishop, Robinson and Freedman, Js.

Argued October 17, 2008—officially released February 10, 2009

*Mark Merrow*, for the appellant (plaintiff).

*Jason M. Dodge*, for the appellees (defendants).

*Opinion*

ROBINSON, J. This appeal concerns whether an injury suffered by an employee while walking at a pace akin to power walking during an unpaid lunch break on the employer's premises is compensable under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The plaintiff, Sharon Brown, appeals from the decision of the workers' compensation review board (board) vacating the decision of the workers' compensation commissioner (commissioner) granting her application for workers' compensation benefits. We affirm the decision of the board.

The following facts and procedural history are necessary for our resolution of the plaintiff's appeal. The plaintiff, who began working for the defendant United Technologies Corporation, Pratt & Whitney Aircraft Division (Pratt & Whitney)[1] in 1978, was taking a walk on the Pratt & Whitney grounds during her one-half hour unpaid lunch break on July 8, 2005, when she fell and sustained an injury to her right shoulder. The plaintiff, an employee of the shipping department, had been walking this particular path every day during her lunch break for ten years unless there was rainfall or the temperature was less than forty-eight degrees.[2] The plaintiff testified before the commissioner that she walked daily for the purpose of improving her health;

---

[1] AIG Claims Service, Inc., the workers' compensation insurer for Pratt & Whitney, also was named as a defendant.

[2] The plaintiff was walking on a path along a service roadway used for delivery trucks. There was no sidewalk along the roadway, and the plaintiff testified before the commissioner that she fell after she stepped to the side of the road to distance herself from an oncoming car on the roadway. The plaintiff stated that when she moved to the side, she fell onto gravel, but it is unclear if the roadway was paved.

she is a borderline diabetic and her physician recommended that she exercise. She also testified that her walking is purely voluntary, that she does not associate with any other Pratt & Whitney employees during her walk, that when she walks she churns her arms up and down to get her heart rate higher and that she makes a concentrated effort to elevate her heart rate by walking at a rapid pace. She does not have to ask permission of her supervisor or anyone else at Pratt & Whitney to take a lunchtime walk.

The plaintiff reported her injury to a supervisor and immediately sought medical attention at work. She was sent to the emergency room at Middlesex Hospital and a few days later visited her physician. She eventually learned that she had a torn tendon in her shoulder, and she received physical therapy for her injury.

The plaintiff presented evidence at the hearing before the commissioner that she was totally incapacitated from July 9 through August 20, 2005. In his September 26, 2006 finding and award, the commissioner found that "[t]he health of Pratt & Whitney workers was surely enhanced by any type of reasonable physical activity pursued on company grounds during unpaid breaks by its employees." The commissioner further found that the plaintiff's walking on company grounds during her lunch break "was, under the within facts, 'incidental' to her employment, and, therefore, her right shoulder injury is found to be a compensable event," and also was not barred from compensation under the social-recreational exception to the act. Pratt & Whitney filed a petition for review and a motion to correct the commissioner's decision; the motion to correct was denied by the commissioner.[3]

---

[3] Pratt & Whitney's motion to correct sought to amend the commissioner's findings so as to state: (1) "No evidence was presented that the [plaintiff's] walking on July 8, 2005 was of any benefit to Pratt and Whitney or incidental to her employment; the only testimony presented demonstrated that the [plaintiff] walked for personal health reasons and exercise" and (2) "I find

On October 23, 2007, the board issued its opinion and vacated the commissioner's finding and award, concluding that the plaintiff's injury was not compensable. The board rejected the commissioner's finding that the plaintiff's injury was incidental to her employment and found no mutual benefit to both parties from the plaintiff's activities. The board further found that the commissioner's finding that "[t]he health of Pratt & Whitney workers was surely enhanced by any type of reasonable physical activity" was "unsupported by any probative evidence on the record." (Internal quotation marks omitted.) This appeal followed.

The plaintiff argues that the board improperly concluded that her activities were not incidental to her employment. She did not address the issue of whether her injury arose out of her employment because she claims that Pratt & Whitney concedes this; Pratt & Whitney, however, disputes it. The plaintiff further argues that the social-recreational exception in § 31-275 (16) (B) (i) does not apply to bar compensation for her injury.[4] We affirm the decision of the board not for the reason enunciated by the board but on the ground that the social-recreational exception of § 31-275 (16) (B) (i) bars coverage for the plaintiff's injury.

We initially set forth the applicable standard of review. A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board

that the [plaintiff] did not sustain an injury which arose in the course of her employment since walking on the company grounds during her lunch break for exercise was not incidental to her employment"; (internal quotation marks omitted); and (3) to find that the plaintiff's injuries were social or recreational in nature.

[4] General Statutes § 31-275 contains the definitions applicable to the act, and subdivision (16) (B) provides that injuries sustained while engaging in social or recreational activities are not compensable.

The board did not reach the question of whether the social-recreational exception was applicable, as it found that the plaintiff's injuries were not incidental to her employment and thus were not compensable.

pursuant to General Statutes § 31-301.[5] The board "is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, 239 Conn. 408, 419, 684 A.2d 1155 (1996). "Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Parisi* v. *Yale University*, 89 Conn. App. 716, 722, 874 A.2d 852 (2005).

I

The plaintiff argues that she has satisfied the causal connection between her employment and her injury because she has established that her injury both arose out of her employment and in the course of her employment. Pratt & Whitney asserts that the plaintiff has failed to satisfy both the "arose out of" and "in the course of" prongs because her injury did not occur as

[5] General Statutes § 31-301 provides in relevant part: "(a) At any time within twenty days after entry of an award by the commissioner . . . either party may appeal therefrom to the Compensation Review Board . . . .

"(b) . . . The Compensation Review Board shall hear the appeal on the record of the hearing before the commissioner . . . .

"(c) Upon the final determination of the appeal . . . the Compensation Review Board shall issue its decision, affirming, modifying or reversing the decision of the commissioner. . . ."

General Statutes § 31-301b provides: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

a proximate cause of her employment and because she has failed to demonstrate that her daily walks were incidental to her employment. We address each argument in turn.

For her injury to be compensable, the plaintiff had to prove that it arose both out of her employment and in the course of her employment. "It is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act the plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) arose out of the employment and (2) in the course of the employment." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, supra, 239 Conn. 417–18. "The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." (Internal quotation marks omitted.) *Ryker* v. *Bethany*, 97 Conn. App. 304, 309, 904 A.2d 1227, cert. denied, 280 Conn. 932, 909 A.2d 958 (2006).

A

We first conclude that the plaintiff's injury arose out of her employment.[6] "Proof that the injury arose out of

[6] We note that this is not a circumstance of the board's overturning the commissioner's finding that the injury arose out of the plaintiff's employment. The commissioner did not make a specific finding as to whether the plaintiff's injury arose out of her employment, and the board addressed only the issue of whether the plaintiff's injury occurred in the course of her employment and did not discuss whether her injury arose out of her employment. The plaintiff alleges that Pratt & Whitney conceded that the plaintiff's injury arose out of her employment, but Pratt & Whitney disputes this. As noted in footnote 3, one of the proposed findings in Pratt & Whitney's motion to correct was a finding that the plaintiff did not sustain an injury that "arose in the course of her employment . . . ." We are unclear if this

the employment relates to the time, place and circumstances of the injury." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, supra, 239 Conn. 418. "Speaking generally, an injury arises out of an employment when it occurs in the course of the employment *and* as a *proximate cause* of it. [Therefore] [a]n injury which is a natural and necessary incident or consequence of the employment, though not foreseen or expected, arises out of it. . . . [C]onditions that arise out of employment are peculiar to [it], and not such exposures as the ordinary person is subjected to. It is therefore immaterial where the exposure originates, whether from the employment, or outside of it." (Emphasis in original; internal quotation marks omitted.) *Labadie* v. *Norwalk Rehabilitation Services, Inc.*, 274 Conn. 219, 237–38, 875 A.2d 485 (2005). In *Spatafore*, our Supreme Court stated: "A finding of a fact of this character [whether the injury arose out of the employment] is the finding of a primary fact. . . . This ordinarily and in this case presents a question for the determination of the commissioner and we have no intention of usurping his function. . . . This rule leads to the conclusion that unless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact. . . . The [board] is, therefore, bound by the findings of fact made by the commissioner, unless additions, corrections or modifications of findings of fact are made . . . ." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, supra, 419–20.

Although the commissioner did not make an explicit finding that the plaintiff's injury arose out of her employment, it is implicit in the commissioner's finding that

proposed finding was intended to address the "arose out of" prong or the "in the course of" prong.

the plaintiff's injury was compensable because compensability requires a finding that the injury arose both out of and in the course of employment. The board did not explicitly address the issue of whether the plaintiff's injury arose out of her employment in overturning the finding and award. On the basis of the facts found by the commissioner[7] and the great deference afforded to the commissioner, we cannot say that this case clearly lies on one side or the other of the issue of whether the plaintiff had so departed from her employment as to conclude that her injury did not arise out of her employment.

B

We next address the issue of whether the plaintiff's injury occurred "in the course of" her employment. The plaintiff asserts that her injury occurred "in the course of" her employment because it occurred in the period of her employment, at a place that she may reasonably have been and while she was doing something "incidental" to her employment.

To satisfy the "in the course of" test, the plaintiff must prove that the injury occurred "(a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." (Internal quotation marks omitted.) Id., 418. The plaintiff's injury occurred during the period of her employment[8] and on her employer's

---

[7] The commissioner found that the plaintiff was walking during her lunch break on the grounds of Pratt & Whitney and remained on the grounds at all times. The commissioner also found that the employer was well aware and acquiesced in the fact that many Pratt & Whitney employees walk on the grounds during their lunch breaks.

[8] Our Supreme Court has previously recognized that an unpaid lunch break falls within the "period of employment." See *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 794, 694 A.2d 1230 (1997) ("[w]here . . . a lunchtime injury takes place on the employer's premises, that injury may be said to have occurred in the course of employment, even though the [lunch] interval is technically outside the regular hours of employment in the sense that the

premises, a place that she might reasonably have been, both of which Pratt & Whitney concedes. Furthermore, the plaintiff's injury was sustained while she was doing something that was incidental to her employment, and she is, therefore, able to satisfy all three prongs of the "in the course of" test. Pratt & Whitney concedes that the plaintiff has satisfied the first two prongs of the "in the course of" test but disputes that she was doing something "incidental" to her employment when she was injured.

"[W]hen determining whether the activity is incidental to the employment, the following rule should be applied: If the activity is regularly engaged in on the employer's premises within the period of the employment, with the employer's approval or acquiescence, an injury occurring under those conditions shall be found compensable." *McNamara* v. *Hamden*, 176 Conn. 547, 556, 398 A.2d 1161 (1979). "[T]he term of art 'incidental' embraces two very different kinds of deviations: (1) a minor deviation that is 'so small as to be disregarded as insubstantial' . . . and (2) a substantial deviation that is deemed to be 'incidental to [employment]' because the employer has acquiesced to it." (Citation omitted.) *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 389, 727 A.2d 1253 (1999). "[E]mployer acquiescence is a prerequisite to compensability *only* if the deviation previously has been determined to be substantial. Otherwise, [i]f the deviation is so small as to be disregarded as insubstantial, then the lack of acquiescence is immaterial." (Emphasis in original; internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 268, 746 A.2d 743 (2000).

In determining whether an activity is incidental to employment, "[n]o exact statement, applicable in all

worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he pleases" [internal quotation marks omitted]).

cases, can be made as to what is incidental to an employment." (Internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 389. "The meaning of the term 'incidental' need not be defined as compulsion by or benefit to the employer in all cases." *McNamara* v. *Hamden*, supra, 176 Conn. 553. Although the act of eating lunch itself is considered to be incidental to employment; see *Vitas* v. *Grace Hospital Society*, 107 Conn. 512, 516, 141 A. 649 (1928); as it is considered to be within the category of activities the "performance of which while at work are reasonably necessary to [the employee's] health and comfort"; *Lovallo* v. *American Brass Co.*, 112 Conn. 635, 639, 153 A. 783 (1931); not every injury that occurs during a lunch period is necessarily incidental to one's employment.

In this case, the commissioner found that "[t]he [plaintiff's] injury was sustained on Pratt & Whitney grounds during her work hours. . . . The employer was well aware and acquiesced in the fact that many of its employees and supervisors walked daily around the Pratt & Whitney campus on lunch breaks. . . . The health of Pratt & Whitney workers was surely enhanced by any type of reasonable physical activity pursued on company grounds during unpaid breaks by its employees." The board concluded that the commissioner improperly found that the plaintiff's injury was incidental to her employment. The board noted that "[w]hile such activity may well be beneficial, the trial commissioner did not reach any subordinate finding of fact that the [plaintiff's] purpose in undertaking her physical fitness regimen was intended to benefit her employer." The board further concluded that "the subordinate facts and evidence in the record do not support a finding that the [plaintiff's] injury was incidental to her employment," noting that the commissioner's finding that the health of Pratt & Whitney workers was surely enhanced by reasonable physical activity pursued on company

grounds was inconsistent with the evidence in the record and unsupported by any probative evidence in the record.

We find *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 694 A.2d 1230 (1997), to be instructive on this issue. In *Mazzone*, the plaintiff, who was employed as a mechanic for the defendant transit company, was injured during his unpaid lunch break while he was eating his lunch on an out of service bus parked on the defendant's premises. Id., 790. Our Supreme Court found that the commissioner had incorrectly determined that the plaintiff's injuries were not incidental to his employment, noting that "[e]ating in the lunch hour, and other personal acts . . . *are incidental* to the employment . . . . [I]t is not dispositive that the activity of eating lunch did not further the claimant's employment directly. Acts of ministration by a servant to himself, such as . . . relieving his hunger . . . performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment . . . though they are only indirectly conducive to the purpose of the employment." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 795.

Likewise, although the plaintiff's injury occurred while she was walking at an accelerated pace during her lunch break, which is not an activity that is directly conducive to her employment at Pratt & Whitney, the activity was reasonably necessary to her personal comfort while at work. In addition, Pratt & Whitney was aware that the plaintiff, and many other of its employees, walked during their lunch hour on its premises. When the activity in question is related to personal comfort, recreation, or horseplay and occurs regularly on the employer's premises, the activity becomes incidental if it is approved of or acquiesced in by the employer. See *McNamara* v. *Hamden*, supra, 176 Conn.

555 ("[I]t should not be necessary [in such cases] to bolster the case by adding proof of employer sponsorship of the activity or employer benefit therefrom. It is generally held sufficient that the activity is an accepted and normal one, since it thereby becomes a regular incident and condition of the employment." [Internal quotation marks omitted.]); *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 795 (noting other cases in which employer sanctioned activities were found to be incidental to employment). In light of the circumstances, we conclude that the commissioner correctly determined that the plaintiff's activities were incidental to her employment, and the board incorrectly determined that there were not sufficient subordinate facts to support this finding.[9]

## II

Having determined that the plaintiff's injury satisfied the "arises out of" and "in the course of" tests for compensability, we must next determine whether the social-recreational exception of § 31-275 (16) (B) (i) applies to preclude coverage for the plaintiff's injury. Even when a plaintiff has established that the injury arose out of and in the course of employment, the injury will not be compensable if § 31-275 (16) (B) (i) bars coverage. We conclude that the exception applies.

"It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to

---

[9] We note that this conclusion does not necessarily endorse the commissioner's finding that "[t]he health of Pratt & Whitney workers was surely enhanced by any type of reasonable physical activity pursued on company grounds during unpaid breaks by its employees." Such a finding of a benefit to the health of Pratt & Whitney workers is not a necessary prerequisite to finding that the activity was incidental to the plaintiff's employment.

judicial scrutiny. . . . Where [a workers' compensa-
tion] appeal involves an issue of statutory construction
that has not yet been subjected to judicial scrutiny, this
court has plenary power to review the administrative
decision." (Internal quotation marks omitted.) *Labadie*
v. *Norwalk Rehabilitation Services, Inc.*, supra, 274
Conn. 227.

To determine whether the exclusion of § 31-275 (16)
(B) (i) applies, we must determine whether the major
purpose of the plaintiff's activity was recreational.[10] Nei-
ther this court nor our Supreme Court has had previous
occasion to interpret the meaning of the term "recre-
ational" in this context. "When construing a statute,
[o]ur fundamental objective is to ascertain and give
effect to the apparent intent of the legislature. . . . In
other words, we seek to determine, in a reasoned man-
ner, the meaning of the statutory language as applied
to the facts of [the] case, including the question of
whether the language actually does apply. . . . In seek-
ing to determine that meaning, General Statutes § 1-2z
directs us first to consider the text of the statute itself
and its relationship to other statutes. If, after examining
such text and considering such relationship, the mean-
ing of such text is plain and unambiguous and does
not yield absurd or unworkable results, extratextual
evidence of the meaning of the statute shall not be
considered." (Internal quotation marks omitted.) *Hardt*
v. *Watertown*, 95 Conn. App. 52, 57, 895 A.2d 846 (2006),
aff'd, 281 Conn. 600, 917 A.2d 26 (2007).

We look first to the text of the statute. Section 31-
275 (16) (B) (i) provides that for the purposes of the
act, "personal injury" or "injury" shall not be construed
to include "[a]n injury to an employee that results from

---

[10] Neither party contends that the plaintiff's activity was social in nature.
Therefore, the case will turn on whether the "recreational" exclusion is
applicable.

the employee's voluntary participation in any activity the major purpose of which is social or recreational, including, but not limited to, athletic events, parties and picnics, whether or not the employer pays some or all of the cost of such activity . . . ."

"The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 605, 887 A.2d 872 (2006). Neither party claims that the statute is ambiguous on its face; instead, both argue that § 1-2z should apply and that the plain meaning of the statute supports both of their claims. The plaintiff argues that because § 31-275 (16) (B) (i) plainly does not include the terms "health" or "exercise" as specifically excluded activities, the statute should not be interpreted to exclude her activities. Pratt & Whitney argues that the statute on its face excludes the plaintiff's injury but goes on to discuss an extratextual definition of "recreation" in its analysis of how the statute plainly excludes the plaintiff's activity. Because the plain meaning of the statute cannot support both contentions, we conclude that the statute is ambiguous as to whether the recreational exception encompasses power walking or the like. Section 31-275 (16) (B) (i) does not define recreational, nor does it give an exhaustive list of which activities fall within that category. Because we conclude that the statute is ambiguous, we may consider extratextual evidence to ascertain its meaning. See id., 606; see also *In re Kevin K.*, 109 Conn. App. 206, 213, 951 A.2d 39 ("[h]aving concluded that the text is not clear and unambiguous, we now must turn to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter for interpretive guidance" [internal quotation

marks omitted]), cert. granted on other grounds, 289 Conn. 930, 958 A.2d 159 (2008).

We then turn to the legislative history of § 31-275. Section 31-275 is the definitions section of the act. The entire section was overhauled in 1991, and in 1993 subdivision (16) (B) was added to refine how not to construe the terms "personal injury" or "injury" for the purposes of the act. See Public Acts 1991, No. 91-32; Public Acts 1993, No. 93-228. The discussion in the House of Representatives did not center on this particular change; it was focused on other aspects of the proposed amendments. The discussion was primarily one of striking the appropriate balance between ensuring that employees who are legitimately injured while at work are provided with sufficient coverage and not placing employers in the position of being forced to pay astronomical workers' compensation premiums. Representative Lucien A. DiMeo stressed that the amendment "is a balance of equities." 36 H.R. Proc., Pt. 18, 1993 Sess., p. 6202. It was also noted that the amendment "changes the compensability in some respects similar to the bill that emerged from the Labor Committee but it goes far beyond those, involving . . . voluntary participation in sporting activities . . . ." Id., p. 6147.

Representative DiMeo pointed out how this amendment would respond to a situation like the one in *McNamara*, in which the employee's injuries were deemed compensable when he was injured while playing Ping-Pong before work on his employer's premises. Representative DiMeo, presumably referring to *McNamara*, noted that with this amendment, the legislature was "even controlling that aspect of whether you have come to work and you are engaged in some sports activities. I can recall as Mayor, that we had, in our public works garage, some men brought in a Ping-Pong table. And they would come in a half-hour earlier or so before

they had to punch in and no one really commented about it, one way or another and they would play a little Ping-Pong and it seemed pretty harmless for them to amuse themselves. One of them twisted his ankle and we thought, administratively, it was a little unusual that we would have the town to pay for his recreational injury, but we ended up having to pay for it. And we fought it. I thought it was ridiculous, but we did." Id., pp. 6201–6202. These remarks make clear that the amendment was intended to exclude *voluntary* participation in sporting activities, regardless of the specific nature of such activities. Coverage does not turn on whether the activity in question was group or solitary in nature. The legislature expressed no intention to preclude coverage for certain types of activities, such as softball games, but to allow coverage for similarly voluntary forms of exercise, such as running, simply because the former happens to take place as part of a group.

We also look to the "commonly approved usage" of "recreational" because the term is not defined in the statute. (Internal quotation marks omitted.) *Groton* v. *Mardie Lane Homes, LLC,* 286 Conn. 280, 288, 943 A.2d 449 (2008). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Southern New England Telephone Co.* v. *Cashman,* 283 Conn. 644, 656, 931 A.2d 142 (2007). Random House Webster's Unabridged Dictionary defines "recreation" as "refreshment by means of some pastime, agreeable exercise, or the like. . . . [A] pastime, diversion, exercise, or other resource affording relaxation and enjoyment." Random House Webster's Unabridged Dictionary (2d Ed. 2001).

On the basis of the legislative history of the statute and the dictionary definition of "recreation," we conclude that § 31-275 (16) (B) (i) precludes coverage for

the plaintiff's injury in this case. The statute was enacted after *McNamara* and was clearly intended to eliminate coverage under the act for injuries that occurred in a similar manner, i.e., those that occurred while the employee was engaged in an act for his or her relaxation or enjoyment on the employer's premises, even when there was employer approval or acquiescence to do so. Section 31-275 (16) (B) (i) shifts the focus of the inquiry from employer approval or acquiescence, as in *McNamara*, to an examination of the purpose of the employee's actions before the employee's injury will be compensable. As noted on the floor of the House of Representatives, the act as a whole, and this subdivision in particular, is a difficult, but necessary, balance of equities. In addition, although the statute states that social or recreational activities include, but are not limited to, athletic events, parties and picnics, this illustrative list does not exclude walking or power walking as recreational activities.

Furthermore, the dictionary definition supports excluding coverage for the plaintiff's injury. The definition of "recreation" twice mentions the word "exercise." The plaintiff was undisputedly engaged in "exercise" when she chose to spend her daily lunch breaks, weather permitting, walking at a rapid pace and churning her arms up and down to increase her heart rate. This exercise was also unquestionably solely for the plaintiff's benefit. The plaintiff testified before the commissioner: "I'm a borderline diabetic, so I walk for my health and to get exercise instead of sit[ting] all day." She further testified: "I walk for my health because it's in my family. My mother died and my sister has diabetes. And my doctor recommended that I do exercise." The plaintiff admitted, and the board found, that her decision to walk during her lunch hour was purely voluntary, and there was no evidence in the record that Pratt & Whitney promoted this activity or encouraged

employees to participate. The plaintiff was surely afforded "refreshment" from her daily walks.[11]

A review of the case law from other jurisdictions, while not binding, is also instructive. In *Jones* v. *Trans World Airlines, Inc.*, 70 S.W.3d 468, 469 (Mo. App. 2001), overruled in part on other grounds by *Hampton* v. *Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. 2003), the employee, who had been walking during his lunch break for eight years on the employer's premises, tripped and was injured during one of his daily walks.[12] The court found that the employee sustained his injuries while participating in a recreational activity and, therefore, that the injuries were not compensable. Id., 472. Where the plaintiff, a salesperson for an automobile dealership, was injured riding a co-worker's motorcycle on the sales lot while waiting for customers, the Oregon Supreme Court noted that "there [was] little dispute that, in the context of this case, riding the motorcycle was a 'recreational activity.' " *Roberts* v. *SAIF Corp.*, 341 Ore. 48, 52, 136 P.3d 1105 (2006) (precluding coverage for injury where statute provided that compensable injury did not include "[i]njury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure"). Other cases have referred to a daily walk during one's lunch break as "an act of

---

[11] The plaintiff, in her reply brief, attempts to analogize her walks to "physical therapy" because she was walking for health reasons. We are not persuaded. Similarly, at oral argument, the plaintiff's attorney asserted that the plaintiff "was walking because her doctor told her to walk." The plaintiff's subjective motivation behind engaging in an objectively recreational activity is not relevant to this analysis.

[12] A Missouri statute provides: "Where the employee's participation in a voluntary recreational activity or program is the proximate cause of the injury, benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited regardless that the employer may have promoted, sponsored or supported the recreational activity or program, expressly or impliedly, in whole or in part. . . ." Mo. Rev. Stat. § 287.120.7 (West 2005).

recreational diversion of [one's] own free choice . . . ." *Fireman's Fund Indemnity Co.* v. *Industrial Accident Commission*, 39 Cal. 2d 529, 535, 247 P.2d 707 (1952).

We are also not persuaded by the plaintiff's argument that it is "unimaginable that the legislature intended to exclude coverage for an activity that benefits one's health yet maintain coverage for smoking." The plaintiff is referring to cases such as *Puffin* v. *General Electric Co.*, 132 Conn. 279, 282, 43 A.2d 746 (1945), in which an employee's injury was held to be compensable when it occurred while the employee was smoking during a designated rest period. This argument ignores that coverage does not turn on whether the activity is beneficial to one's health; coverage in such cases turns on whether the activity in question is incidental to one's employment and has nothing to do with whether the activity is recreational in nature. See id.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.